**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CONSUMERS CONCRETE CORP., a Michigan corporation, | ) ) ) | Case No. 23-cv-2695[1] |
| *Plaintiff,* | ) ) | Judge LaShonda A. Hunt |
| v. | ) ) | Magistrate Judge Beth W. Jantz |
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, | ) ) ) | |
| *Defendant.* | ) | |

------------------------------------------------------------------------------------------

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; and CHARLES A. WHOBREY, as Trustee, | ) ) ) ) | |
| *Plaintiffs,* | ) ) | Case No. 23-cv-3005 |
| v. | ) ) | |
| CONSUMERS CONCRETE CORP., a Michigan corporation, | ) ) ) | |
| *Defendant.* | ) ) | |

**CENTRAL STATES'**
**RESPONSIVE MEMORANDUM IN SUPPORT OF MOTION**
**TO ENFORCE OR, IN THE ALTERNATIVE, MODIFY ARBITRATION AWARD**

Daniel E. Sullivan (#6330522)
Central States Law Department
8647 W. Higgins Road
Chicago, Illinois 60631
Telephone: (847) 582-5078
Fax: (847) 518-9797
dsulliva@centralstatesfunds.org
*Counsel for Central States, Southeast*
*and Southwest Areas Pension Fund*

---

[1] By order dated July 25, 2023 (Dkt. No. 18), the Court found that the Case Number 23-cv-2695 and Case Number 23-cv-3005 were to be consolidated under Federal Rule of Civil Procedure 42 for all purposes, with all filings to be made in Case No. 23-cv-2695.

## TABLE OF CONTENTS

**Introduction** ............................................................................................................. 1

**Argument** ................................................................................................................... 2

    I.    The Court Should Be Persuaded by the Unanimous Opinions that Agree with the Final Award ............................................................................................................... 3

    II.  Consumers' Argument Regarding "in the Case of a Partial Withdrawal" Are Unavailing.... 6

    III. Consumers' Argument Regarding a "Definition" of Withdrawal Liability in 29 U.S.C. § 1381(b)(1) Cannot Be Correct. ......................................................................... 10

        A.   Consumers' Argument that 29 U.S.C. § 1381(b)(1) Provides a Universal Definition of Withdrawal Liability Clashes with the Text ........................................... 11

        B.   Consumers' Definitional Argument Would Render the Statute Unworkable. .............. 13

    IV. The Fund's Position Is Fully Consistent with the Purpose of the Statute. ......................... 14

    V.  Consideration of the PBGC's Opinion Letters and Regulations Does Not Compel a Different Conclusion. ...................................................................................... 16

**Conclusion** ............................................................................................................. 19

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cent. States, Se. & Sw. Areas Pension Fund v. Chatham Properties*,
929 F.2d 260 (6th Cir. 1991) ........................................................................... 10

*Cent. States, Se. & Sw. Areas Pension Fund v. Safeway, Inc.*,
229 F.3d 605 (7th Cir. 2000) ........................................................................... 16

*Cent. States, Se. & Sw. Areas Pension Fund v. Slotky*,
956 F.2d 1369 (7th Cir. 1992) .................................................................. 14, 16

*CenTra, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund*,
578 F.3d 592 (7th Cir. 2009) ........................................................................... 16

*Chen v. Barr*,
960 F.3d 448 (7th Cir. 2020) ........................................................................... 10

*Gaffney v. Riverboat Servs. of Ind., Inc.*,
451 F.3d 424 (7th Cir. 2006) ............................................................................. 6

*GCIU-Employer Retirement Fund v. Quad/Graphics, Inc.*,
250 F. Supp. 3d 551 (C.D. Cal. 2017) ..................................................... passim

*GCIU-Employer Retirement Fund v. Quad/Graphics, Inc.*,
909 F.3d 1214 (9th Cir. 2018) ................................................................. passim

*Marlowe v. Bottarelli*,
938 F.2d 807 (7th Cir. 1991) ........................................................................... 17

*Milwaukee Brewery Workers' Pension Plan v. Joseph Schlitz Brewing Co.*,
513 U.S. 414 (1995) .................................................................................... 3, 12

*O'Kane v. Apfel*,
224 F.3d 686 (7th Cir. 2000) ........................................................................... 13

*Perfection Bakeries, Inc. v. Retail Wholesale & Dep't Store Inter'l Union & Indus. Pension Fund*,
No. 2:22-cv-573, 2023 WL 4412165 (N.D. Ala. July 7, 2023) ........................... passim

*Robbins v. Kohn Bev. Co.*,
No. 84-cv-3507, 1985 WL 955 (N.D. Ill. Apr. 29, 1985) ............................. 11

*Russello v. United States*,
464 U.S. 16 (1983) ............................................................................................. 7

*Tuduj v. Newbold*,
958 F.3d 576 (7th Cir. 2020) ............................................................................. 2

*Wise v. Ruffin,*
   914 F.2d 570 (4th Cir. 1990) ................................................................................ 11

**Statutes**

1 U.S.C. § 1 .......................................................................................................... 10

29 U.S.C. § 1381 ............................................................................................ passim

29 U.S.C. § 1386 ............................................................................................ passim

29 U.S.C. § 1391 .................................................................................................. 10

29 U.S.C. § 1399 ............................................................................................ passim

29 U.S.C. § 1405 ............................................................................................ passim

**Regulations**

29 C.F.R. § 4206.1 ......................................................................................... 17, 18

29 C.F.R. § 4206.3 .................................................................................... 15, 17, 18

## INTRODUCTION

The Court should enforce the Final Award issued in the arbitration at issue (the "Arbitration") and uphold two withdrawal liability assessments and their associated payment schedules issued by the Central States, Southeast and Southwest Areas Pension Fund (the "Fund")[2] to Consumers Concrete Corp. ("Consumers") in connection with Consumers' partial withdrawal from the Fund in 2017 and Consumers' complete withdrawal from the Fund in 2019. (*See* Final Award, Exhibit M to Joint Stipulations, Dkt. No. 21-19 (hereinafter, the "Final Award, Stip. Ex. M, at __").)[3] Consumers' memorandum (hereinafter, "Consumers Brief, Dkt. No. 31, at __") goes to great lengths to explain the internal logic of its legal theory but does little to show that its version of the law is actually correct. Indeed, Consumers' interpretation creates more textual problems than it solves and would require rewriting or ignoring several sections of the statute and thus should be rejected. Consumers' arguments treat case law little better, as Consumers fails to address the detailed persuasive authority that rejected the very arguments that Consumers now relies upon.

The Court therefore should affirm the arbitrator's conclusion that the "plain language of [29 U.S.C. § 1381(b)(1)] requires" multiemployer pension plans to apply the credit for a prior partial withdrawal to a later withdrawal under 29 U.S.C. § 1381(b)(1)(B) first and only "then" apply the 20-year limitation on payments under 29 U.S.C. § 1381(b)(1)(C). (Final Award, Stip. Ex. M, at 11.) Not only does this holding follow the plan text of 29 U.S.C. § 1381(b)(1), it also comports with other provisions of the statute and is consistent with the only court authorities on

---

[2]     Definitions used herein are the same as those used in previous brief filed by the Fund. (Dkt. No. 29.)

[3]     For the Court's convenience, citations in this filing to the arbitration record contain hyperlinks to the cited page of the relevant ECF docket filing. Case citations are similarly hyperlinked to the associated pin cites at Westlaw.

the issue. To be clear, upholding the arbitrator's decision as to this issue (the order in which the credit should be applied vis-à-vis the 20-year limitation on payments) would be sufficient to enforce the Final Award, because in that case the relevant payment schedules for Consumers' withdrawal liability assessments,[4] which the arbitrator upheld, would be unaffected. (Joint Stipulated Facts, Exhibit A to Joint Stipulations, Dkt. No. 21-1 (hereinafter, the "Stipulated Facts, Stip. Ex. A, ¶ __"), ¶ 72.)

## ARGUMENT

As explained in the Fund's previous brief, the only dispute in the Arbitration was the correct interpretation of the statute and related regulations, and the parties did not dispute the relevant material facts. (Final Award, Stip. Ex. M, at 2.) Accordingly, and as explained above, this lawsuit presents one[5] purely legal issue: whether, in calculating the 2019 Complete Assessment under 29 U.S.C. § 1381(b)(1), the credit for the 2017 Partial Assessment should be applied prior to the application of the 20-year limitation on payments set forth in 29 U.S.C. § 1399(c)(1)(B), as was held by the Ninth Circuit in *GCIU-Employer Retirement Fund v. Quad/Graphics, Inc.*, 909 F.3d 1214 (9th Cir. 2018) (hereinafter, "*Quad/Graphics II*"), the District Court for the Central District of California in *GCIU-Employer Retirement Fund v. Quad/Graphics, Inc.*, 250 F. Supp. 3d 551 (C.D. Cal. 2017) (hereinafter, "*Quad/Graphics I*"), and the District Court for the Northern District of Alabama in *Perfection Bakeries, Inc. v. Retail Wholesale and Department Store International Union and Industry Pension Fund*, No. 2:22-cv-

---

[4]     As explained in more detail in the Fund's opening brief, the two assessments are the "2017 Partial Assessment," which resulted from Consumers' partial withdrawal from the Fund in 2017, and the "2019 Complete Assessment," which resulted from Consumers' subsequent complete withdrawal from the Fund in 2019. (*See generally* Dkt. No. 29.)

[5]     In the Arbitration, Consumers also challenged the amount of the credit. Consumers has not, however, raised the question of the amount of the credit in its opening brief and therefore cannot do so in its response. *Tuduj v. Newbold*, 958 F.3d 576, 579 (7th Cir. 2020) ("[A]rguments not raised in an opening brief are waived."). To the extent the Court does consider the question of the amount of the credit, however, the Fund addressed the issue in its opening brief. (*See* Dkt. No. 29 at 15–20.)

573, 2023 WL 4412165, at *1 (N.D. Ala. July 7, 2023) (appeal pending). Because the historical facts were not disputed in the Arbitration, there can be no dispute that if the credit for the 2017 Partial Assessment should be applied *before* applying the 20-year limitation on payments, then the total withdrawal liability for the 2019 Complete Assessment should remain as initially calculated by the Fund, *i.e.*, payable in 240 monthly payments of $50,736.80, with the first such monthly payment due on October 1, 2019 and the last such payment due on September 1, 2039 (Stipulated Facts, Stip. Ex. A, ¶ 72).

## I. The Court Should Be Persuaded by the Unanimous Opinions that Agree with the Final Award.

As discussed in the Fund's opening brief, one federal court of appeals and two district courts have agreed that the credit should be applied before the 20-year limitation on payments, which is the holding reached by the Final Award in this case. And Consumers' assertion that these cases "fail to account for the arguments" in Consumers' brief is simply not correct, as these decisions all considered and conclusively rejected nearly all of Consumers' points on textual grounds. (*See id.* at 22.)

Indeed, the Ninth Circuit correctly observed that 29 U.S.C. § 1381(b)(1)(B) refers to both subsections of 29 U.S.C. § 1386. *Quad/Graphics* II, 909 F.3d at 1218. Having established this, the Ninth Circuit determined that the statutory language unambiguously commands that 29 U.S.C. § 1381(b)(1)(B) is to be applied before 29 U.S.C. § 1381(b)(1)(C), and that both parts of 29 U.S.C. § 1386 are to be applied before applying the 20-year limitation on payments. *Id.* The Ninth Circuit concluded that because "the statutory language is unambiguous, our inquiry comes to an end." *Id.* Although the unambiguous language of Section 1381 was dispositive, the Ninth Circuit further noted that the employer's position in that case "makes no practical sense," because the 20-year payment limitation described in 29 U.S.C. § 1399(c)(1)(B) is a "debt-

forgiveness provision" that "can only logically be applied after that withdrawal liability is calculated" *Id.* (discussing *Milwaukee Brewery Workers' Pension Plan v. Joseph Schlitz Brewing Co.*, 513 U.S. 414, 419 (1995)).[6] The Ninth Circuit next considered and rejected the PBGC opinion letters that Consumers relies on here, stating that the PBGC's "1985 opinion letter does not purport to rely on agency expertise, but merely misconstrues the plain language of § 1381." *Quad/Graphics* II, 909 F.3d at 1218. Because the only federal appellate court to rule on the issue has held that 29 U.S.C. § 1381(b)(1)(B)'s plain text and the overall structure of the statute each require the credit for a prior partial withdrawal to be applied before the 20-year limitation on payments, the Court should look to that opinion for guidance.

The district court decision in *Quad/Graphics I* should also persuade the Court, because the district court there provided several detailed explanations for its interpretation of the statute and explicitly rejected the arguments now proposed by Consumers about the meaning of "in the case of a partial withdrawal." *See* 250 F. Supp. 3d at 563–65. (*See* Consumers Brief, Dkt. No. 31, at 8–16). Specifically, the district court noted that adopting the employer's position would mean that:

> [Section] 1381(b)(1)(B) would refer to the partial withdrawal credit if the subsequent years were a partial withdrawal—but not if they were complete withdrawals. This makes no sense. Quad gives no reason why the sequence in which the partial withdrawal credit is applied should differ based on whether the withdrawal in the subsequent year is partial or complete.

*Quad/Graphics I*, 250 F. Supp. 3d at 563; *see also Perfection Bakeries*, 2023 WL 4412165 at *10 ("any other reading could lead to a situation where the credit cannot be applied at all"). The district court in *Quad/Graphics I* also held that the specific reference to 29 U.S.C. § 1399(c)(1)(B) as opposed to Section 1399 as a whole in 29 U.S.C. § 1381(b)(1)(C) suggests

---

[6] As explained in more detail below, this interpretation is well-grounded in the text of 29 U.S.C. § 1399(c)(1)(B), which limits an employer's "liability."

that both parts of 29 U.S.C. § 1386 (*i.e.*, subsections (a) and (b)) are to be applied pursuant to 29 U.S.C. § 1381(b)(1)(B) before making the adjustment for the 20-year limitation of payments set forth in subparagraph (C). 250 F. Supp. 3d at 563. The district court then noted that 29 U.S.C. § 1386(b)(1)'s reference to "[i]n the case of an employer that has withdrawal liability for a partial withdrawal from a plan" comports with 29 U.S.C. § 1381(b)(1)(B)'s reference to "in the case of a partial withdrawal," which directly contradicts Consumers' argument that the Fund's interpretation is inconsistent with the statute. (Consumers Brief, Dkt. No. 31, at 13–15.) The *Quad/Graphics I* district court also observed that the interpretation of 29 U.S.C. § 1381 that Consumers advocates here does not comport with 29 U.S.C. § 1399. 250 F. Supp 3d at 564. Accordingly, *Quad/Graphics I* provides a useful analysis to this Court because it details several textual reasons for the interpretation contained in the Final Award.

Consumers' critique that the decisions cited "fail to account for the arguments [Consumers makes]" similarly fails when applied to the *Perfection Bakeries* opinion.[7] *Perfection Bakeries* addresses Consumers' "definitional" argument, Consumers' myopic focus on the phrase "in the case of a partial withdrawal," and Consumers' argument regarding the purpose of the statute. *Id.* at *10–11. Following a detailed discussion of the main arguments presented by Consumers here, the *Perfection Bakeries* court held:

> Interpreting "in the case of a partial withdrawal" [under 29 U.S.C. § 1381(b)(1)(B)] to trigger application of the adjustment whenever a partial withdrawal has occurred or is occurring is consistent with the plain language of § 1381(b)(1)(B) and the MPPAA as a whole. Indeed, given the clarity of the rest of the statute—in particular § 1405(a)(1)—any other reading could lead to a situation where the credit cannot be applied at all.

*Id.* at 10. Consumers thus oversimplifies when it criticizes that the district court reached its decision only because it "speculated" that 29 U.S.C. § 1381(b)(1)(D) made 29 U.S.C. § 1405 the

---

[7]     Consumers' counsel represents the employer in *Perfection Bakeries*.

"final" adjustment such that the credit in 29 U.S.C. § 1386(b) must be applied as an adjustment for purposes of 29 U.S.C. § 1381(b)(1)(B)—as the quote above demonstrates, this was far from the only reason for the district court's decision. (*See* Consumers Brief, Dkt. No. 31, at 23). But in addition to ignoring the other bases for the district court's opinion in *Perfection Bakeries*, Consumers also mischaracterizes the only aspect of the court's opinion that it actually addresses: the district court noted that 29 U.S.C. § 1405 *itself* (not just 29 U.S.C. § 1381(b)(1)(D)) makes clear that 29 U.S.C. § 1386(b) is to be applied before Section 1405. *Perfection Bakeries, Inc.*, 2023 WL 4412165 at *10 ("By its clear and unambiguous terms, § 1405(a)(1) requires application of all of § 1386 before the fourth potential adjustment can be applied."). As Consumers fails to address the *Perfection Bakeries* decision in any detail, and because that decision provides detailed and persuasive reasoning for its conclusion, the Court should look to that decision for in-depth analysis of the statute.

## II. Consumers' Argument Regarding "in the Case of a Partial Withdrawal" Are Unavailing.

When Consumers focuses on "in the case of a partial withdrawal" in 29 U.S.C. § 1381(b)(1)(B), it commits the very same selective reading it claims the Court must avoid. *See Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 445 (7th Cir. 2006) ("we do not read a word or words of a statute in isolation; rather, we read them in the context in which they appear in the provision."). Starting with the plain text, 29 U.S.C. § 1381(b)(1)(B) does not refer exclusively to 29 U.S.C. § 1386(a), but instead refers to both parts of Section 1386, including subsection (b), which describes the credit for a prior partial withdrawal to be applied to a subsequent partial withdrawal or complete withdrawal. Despite the fact that the plain text of 29 U.S.C. § 1381(b)(1) thus refers to 29 U.S.C. § 1386 as a whole (without limiting the reference to

just subsection (a) or (b)), Consumers insists that Congress really intended to refer only to subsection (a).

Through this argument, Consumers seeks to rewrite the statute. If Congress used "section 1386 of this title" in 29 U.S.C. § 1381(b)(1)(B) intending only to direct plans to apply 29 U.S.C. § 1386(a) at this step, then Congress would have referred only to 29 U.S.C. § 1386(a) and not the statutory section as a whole. This distinction is particularly instructive because 29 U.S.C. § 1381(b)(1) as a whole demonstrates that Congress knew how to refer to only specific subsections of MPPAA. Indeed, in the very next subparagraph, 29 U.S.C. § 1381(b)(1)(C), Congress referred specifically to 29 U.S.C. § 1399(c)(1)(B) rather than citing generally to 29 U.S.C. § 1399. *Quad/Graphics II,* 250 F. Supp. 3d at 563. The reference to Subparagraph 1399(c)(1)(B) is significant because Congress arguably did not need to be so specific in 29 U.S.C. § 1381(b)(1)(C) in order to convey its intended meaning, because the 20-year limitation on payments appears in 29 U.S.C. § 1399(c)(1)(B) and nowhere else in Section 1399. Yet Congress nonetheless chose to pinpoint the exact subparagraph that applied, further indicating that in drafting 29 U.S.C. § 1381(b)(1), Congress stated precisely what it meant to when it instructed plans to apply 29 U.S.C. § 1386 as a whole. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (citations omitted)). The takeaway is that in drafting 29 U.S.C. § 1381(b), Congress knew exactly what it was doing when it referred to all of 29 U.S.C. § 1386 as opposed to referring only to subsection (a) or (b).

This observation was a key aspect of the Arbitrator's holding (and the *Quad/Graphics I* and *Perfection Bakeries* decisions) but is wholly unaddressed by Consumers. (Final Award, Stip.

Ex. M, at 11.) Indeed, as in the Arbitration, "Consumers provides no credible argument that Congress deliberately omitted the prior partial credit from the sequence of adjustments in [29 U.S.C. § 1381(b)(1)(B)] intending it to be applied after all the other adjustments. Rather, the reference to [29 U.S.C. § 1386] indicates the opposite Congressional intent." (Final Award, Stip. Ex. M, at 11.) Because Congress referred to 29 U.S.C. § 1386 as a whole, "in the case of a partial withdrawal" should be understood as including a case in which a previous partial withdrawal must be accounted for (in terms of a credit), as that is the situation in which subsection (b) applies. Indeed, this is precisely what the *Perfection Bakeries* court held after a detailed examination of the issues:

> [T]here is an interpretation of "in the case of a partial withdrawal" that permits that language to perform a function while still honoring the rest of the text. "In the case of a partial withdrawal" could bear two meanings: (1) "where an employer's current withdrawal is partial"; and (2) "where an employer has liability for a previous partial withdrawal."

*Perfection Bakeries*, 2023 WL 4412165 at *10. And contrary to Consumers' assertion, 29 U.S.C. § 1381(b)(3) does not change this result, because the definition of "partial withdrawal" described there explicitly applies only for purposes of 29 U.S.C. § 1381(a). (*See* Consumers' Brief, Dkt. No. 31, at 9–10.) However, even if that definition of "partial withdrawal" also applied with respect to 29 U.S.C. § 1381(b), that would not alter the legal conclusion. *Quad/Graphics II*, 909 F.3d at 1218; *see also Quad/Graphics I,* 250 F. Supp. 3d at 563–64; *and see Perfection Bakeries*, 2023 WL 4412165 at *10.

The Fund's interpretation does not impermissibly render "in the case of a partial withdrawal" superfluous. (Consumers Brief, Dkt. No. 31, at 12–13.) Indeed, examining 29 U.S.C. § 1381(b)(1) as a whole reveals that Congress did not intend the phrase "in the case of a partial withdrawal" to change the straightforward meaning of "section 1386 of this title" in the

way that Consumers proposes. As explained above, the very next provision at 29 U.S.C. § 1381(b)(1)(C) states "then, to the extent necessary to reflect the limitation on annual payments under section 1399(c)(1)(B) of this title," even though arguably the same purpose would have been accomplished by saying only "the limitation on annual payments" or only "under section 1399(c)(1)(B) of this title," because said limitation appears only at 29 U.S.C. § 1399(c)(1)(B). Similarly, 29 U.S.C. § 1381(b)(1)(A) reads "first, by any de minimis reduction applicable under section 1389 of this title," where simply stating "under section 1389" arguably would have been sufficient, because that section is the only section that deals with de minimis reductions. Accordingly, reading "in the case of a partial withdrawal" as meaning (1) "where an employer's current withdrawal is partial"; and (2) "where an employer has liability for a previous partial withdrawal," *Perfection Bakeries*, 2023 WL 4412165 at *10, is fully consistent with the way that Congress used similar phrases in other parts of 29 U.S.C. § 1381(b)(1), because Congress did not use other similar phrases in 29 U.S.C. § 1381(b)(1) to alter the meaning of the statutory references contained therein.

Consumers' insistence that 29 U.S.C. § 1381(b)(1)(B) corresponds only to language in 29 U.S.C. § 1386(a) is similarly unavailing (Consumers Brief, Dkt. No. 31, at 11) because 29 U.S.C. § 1381(b)(1)(B) also corresponds to language in 29 U.S.C. § 1386(b). Specifically, 29 U.S.C. § 1386(b)(1) states that it applies "In the case of an employer that has withdrawal liability for a partial withdrawal from a plan" in an earlier year, which corresponds to 29 U.S.C. § 1381(b)(1)'s use of "in the case of a partial withdrawal." As the district court in *Quad/Graphics I* observed: "This similarity in language substantially undermines [the] argument that the phrase 'case of partial withdrawal' in § 1381(b)(1)(B) refers only to the specific withdrawal assessment being calculated rather than to any situation where a partial withdrawal

may impact the assessment being calculated." 250 F. Supp. 3d at 564.

Nor does "the reference to only a single withdrawal" at various points mean "that only one withdrawal—the current one being calculated—is at issue," as Consumers claims. (Consumers Brief, Dkt. No. 31, at 14.) As an initial matter, Consumers' argument, which emphasizes occurrences of the word "the," relies on a distinction that Congress did not intend. (*See id.* at 13–14.) Although the statute does generally refer to "the" withdrawal at various places, the general rule provides that in statutes the singular includes the plural (and *vice versa*). 1 U.S.C. § 1; *Chen v. Barr*, 960 F.3d 448, 450 (7th Cir. 2020) ("the singular and plural are equivalent unless the context requires otherwise"). But even if Consumers were correct that "there is only a single withdrawal at issue" (Consumers Brief, Dkt. No. 31, at 14), this observation merely begs the question—if the credit for a prior partial withdrawal is to be applied at 29 U.S.C. § 1381(b)(1)(B), then the partial withdrawal is indeed part of the calculation of the later complete withdrawal, but it is still only the later complete withdrawal that is "at issue." Put differently, determining which withdrawal is "at issue" says nothing about the factors that go into calculating the liability for that withdrawal, as those factors include whether there is a previous withdrawal to account for.

### III. Consumers' Argument Regarding a "Definition" of Withdrawal Liability in 29 U.S.C. § 1381(b)(1) Cannot Be Correct.

Rather than addressing the issues created by its twisted approach (which issues were identified by the *Quad/Graphics* and *Perfection Bakeries* courts), Consumers focuses on the arbitrator's finding that "[t]he withdrawal liability of an employer to a plan is the amount determined under [29 U.S.C. § 1391] to be the allocable amount of unfunded vested benefits." (Final Award, Stip. Ex. M, at 12; Consumers Brief, Dkt. No. 31, at 16–20.) As an initial matter, the arbitrator's conclusion is consistent with observations by several courts. *See, e.g., Cent.*

*States, Se. & Sw. Areas Pension Fund v. Chatham Properties*, 929 F.2d 260, 262 (6th Cir. 1991)
("Under ERISA an employer withdrawing from a multiemployer pension plan is subject to
withdrawal liability equal to its allocable share of the plan's unfunded vested benefits at the time
of its withdrawal."); *Wise v. Ruffin*, 914 F.2d 570, 572 (4th Cir. 1990); *Robbins v. Kohn Bev.
Co.*, No. 84-cv-3507, 1985 WL 955, at *3 (N.D. Ill. Apr. 29, 1985) ("The withdrawal liability of
an employer is an allocable share of the unfunded vested benefits of the plan."). In any event, the
Final Award's discussion of the "definition" of withdrawal liability is intended only to address
Consumers' argument that the Fund's position would render the phrase "withdrawal liability" in
29 U.S.C. § 1386(b) superfluous and has nothing to do with the Final Award's first conclusion
that the 29 U.S.C. § 1381(b)(1) unambiguously requires that 29 U.S.C. § 1386 be applied before
29 U.S.C. § 1399(c)(1)(B). (Final Award, Stip. Ex. M, at 11–12.) Thus, even if Consumers'
argument regarding the "definition" of withdrawal liability were correct, it would not change the
fact that the Final Award correctly determined that 29 U.S.C. § 1381(b)(1) unambiguously
requires the credit be applied before the limitation on payments. (Final Award, Stip. Ex. M, at
11–12.) To be clear, however, Consumers' argument regarding the definition of withdrawal
liability renders the statute unworkable and clashes with the text itself.

### A. Consumers' Argument that 29 U.S.C. § 1381(b)(1) Provides a Universal Definition of Withdrawal Liability Clashes with the Text.

Consumers' position regarding withdrawal liability as a defined term must fail because
the text itself shows that Congress did not create the distinction between withdrawal liability and
an employer's allocable share of unfunded vested benefits that Consumers now insists upon. 29
U.S.C. § 1399(c)(1)(B), which is to be applied under 29 U.S.C. § 1381(b)(1)(C), limits the
employer's "liability," rather than reducing the employer's allocable share of UVBs, even though
Consumers' theory would suggest that there is no "liability" to limit until after 29 U.S.C.

§ 1381(b)(1)(C) (and by extension 29 U.S.C. § 1399(c)(1)(B)) is fully applied.[8] Consistent with this straightforward reading, and contrary to Consumers' theory, both the Supreme Court and the Ninth Circuit have read 29 U.S.C. § 1399(c)(1)(B) as a provision that "forgives all debt outstanding after 20 years," rather than as a provision that prevents debt from accruing in the first place. *Milwaukee Brewery Workers' Pension Plan*, 513 U.S. at 419; *Quad/Graphics* II, 909 F.3d at 1218. Accordingly, 29 U.S.C. § 1399(c)(1)(B) shows that Congress did not intend for withdrawal liability to exclusively mean the result of the 29 U.S.C. § 1381(b)(1) adjustments.

29 U.S.C. § 1405(e) also undermines Consumers' definitional argument, because that subsection addresses "the withdrawal liability to the employer" if there are multiple withdrawals from multiple plans in connection with a single liquidation:

> (e) **One or more withdrawals of employer attributable to same sale, liquidation, or dissolution.** In the case of one or more withdrawals of an employer attributable to the same sale, liquidation, or dissolution, under regulations prescribed by the corporation—
>
> (1) all such withdrawals shall be treated as a single withdrawal for the purpose of applying this section, and
>
> (2) the withdrawal liability of the employer to each plan shall be an amount which bears the same ratio to the present value of the withdrawal liability payments to all plans (after the application of the preceding provisions of this section) as the withdrawal liability of the employer to such plan (determined without regard to this section) bears to the withdrawal liability of the employer to all such plans (determined without regard to this section).

29 U.S.C. § 1405(e). Again, 29 U.S.C. § 1405 is the fourth and final adjustment listed in 29 U.S.C. § 1381(b)(1). Thus, if Consumers were correct that no withdrawal liability exists at all until after all steps of 29 U.S.C. § 1381(b)(1) are complete, then 29 U.S.C. § 1405(e) would make no sense, because there would be no withdrawal liability to be apportioned among different

---

[8] Both 29 U.S.C. §§ 1399(b)(2)(A)(ii) and (c)(1)(D)(ii) refer to "unfunded vested benefits," so the phrase "employer's liability" in 29 U.S.C. § 1399(c)(1)(B) was no accident, and can only be understood as meaning "withdrawal liability."

funds under Subsection 1405(e)(2) until after Subsection 1405(e) had already been applied by operation of 29 U.S.C. § 1381(b)(1)(D). As Consumers' interpretation would render the statute absurd, it cannot be correct. *O'Kane v. Apfel*, 224 F.3d 686, 691 (7th Cir. 2000). Together, these provisions show that "withdrawal liability" was not intended to be used as a universal defined term in the way that Consumers proposes.

**B. Consumers' Definitional Argument Would Render the Statute Unworkable.**

Consumers' definitional approach would interfere with the straightforward operation of the statute in several ways. Critically, the credit for a prior partial withdrawal applies to both subsequent complete and partial withdrawals, as the Court in *Quad/Graphics I* explained:

> [T]he partial withdrawal credit [described in 29 U.S.C. § 1386(b)] applies to withdrawal liability assessed in subsequent years *regardless* [of] whether the withdrawal in those subsequent years is partial or complete. Under [the withdrawing employer's] reasoning, however, [29 U.S.C. § 1381(b)(1)(B)] would refer to the partial withdrawal credit if the subsequent years were a partial withdrawal—but not if they were complete withdrawals. This makes no sense.

250 F. Supp. 3d at 563 (emphasis in original) (citations omitted). As the *Quad/Graphics I* opinion observed, 29 U.S.C. § 1386(b)(1) explicitly provides that the credit for a prior partial withdrawal must be applied both to subsequent partial and complete withdrawals, and that this application is performed pursuant to 29 U.S.C. § 1381(b)(1)(B). Applying 29 U.S.C. § 1386(b) as the second adjustment for 29 U.S.C. § 1381(b)(1)(B) for partial withdrawals but not for complete withdrawals simply "makes no sense." *Quad/Graphics I*, 250 F. Supp 3d at 563.

Section 1405, which contains the fourth and "final" adjustment under 29 U.S.C. § 1381(b)(1)(D), also demonstrates the structural issues with Consumers' approach. 29 U.S.C. § 1405(a)(1) generally states that, when an employer liquidates its assets, "the unfunded vested benefits allocable to an employer (*after the application of all sections of this part having a lower number designation than this section*) . . . shall not exceed" certain amounts. (Emphasis added).

"By its clear and unambiguous terms," therefore, "§ 1405(a)(1) requires application of all of § 1386 before the fourth potential adjustment can be applied." *Perfection Bakeries*, 2023 WL 4412165 at *10. Consumers' interpretation thus would require the Court to ignore Congress' explicit direction in Section 1405(a)(1). Put differently, 29 U.S.C. § 1386(b) must be applied when performing the calculation required under 29 U.S.C. § 1381(b)(1)(B), because applying 29 U.S.C. § 1386(b) after 29 U.S.C. § 1381(b)(1)'s adjustments are completed would contradict Congress' directive that the Section 1405 calculation must take place after the § 1386 calculation.

A comparison between 29 U.S.C. §§ 1386(b) and 1399(c)(1)(B) similarly shows that the former provision must be applied before the latter (in accordance with the plain text of 29 U.S.C. § 1381(b)(1)):

> The § 1386(b) prior partial withdrawal credit reduces the employer's complete withdrawal liability. The § 1399(c)(1)(B) provision, which forgives debt, can only logically be applied after that withdrawal liability is calculated. The § 1386(b) credit reduces the employer's debt, and an employer cannot be forgiven a debt for which it is not liable.

*Quad/Graphics II*, 909 F.3d at 1219 (citation omitted). Accordingly, Sections 1386, 1399, and 1405 together do not allow for the reading Consumers advances. Thus, the Fund was correct to apply the 29 U.S.C. § 1386(b) credit before applying the limitation on payments described in 29 U.S.C. § 1399(c)(1)(B).

**IV. The Fund's Position Is Fully Consistent with the Purpose of the Statute.**

Consumers next argues that the Fund's position is inconsistent with what Consumers describes as the purpose of the statute, but Consumers focuses only on a single section of the statute and in so doing neglects to mention that the overarching goal of the MPPAA is for employers to pay their fair share of a fund's UVBs. *Cent. States, Se. & Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1371 (7th Cir. 1992). (Consumers Brief, Dkt. No. 31, at 21–22.) Given

this background, Consumers' attempt to rewrite the MPPAA by isolated reference to the intent of 29 U.S.C. § 1386(b) should not persuade the Court. Indeed, an examination of the effect of 29 U.S.C. § 1381(b)(1) on Consumers' withdrawal liability belies the argument that the Fund charges employers more than what Congress intended. Specifically, 29 U.S.C. § 1399(c)(1)(B) already provides potentially massive savings to employers. Consumers' prior partial withdrawal liability, for example, was reduced by $10,777,555.85, which is the amount of the 2017 Partial Assessment's principal that Consumers will not have to pay by virtue of the 20-year limitation on payments. (Stipulated Facts, Stip. Ex. A, ¶¶ 55, 61.) And in cases where the employer's payment schedule is not capped, the partial withdrawal liability credit may present significant, additional savings for the employer. And, as noted in 29 C.F.R. § 4206.3, the partial withdrawal liability credit an employer receives may be "equal to zero." As a result, Consumers protests too much when it claims it "has not received a single penny" as a result of 29 U.S.C. § 1386(b), because it has received a significant savings by virtue of 29 U.S.C. § 1399(c)(1)(A) and because the PBGC has explicitly recognized that the credit under 29 U.S.C. § 1386 may be equal to zero. (Consumers Brief, Dkt. No. 31, at 22.)

Contrary to Consumers' arguments, the Fund's interpretation does not contradict the purpose of the credit but rather reflects Congress's affirmative choice that the credit should be applied before the 20-year limitation on payments. Put differently, Consumers' emphasis on the purpose of 29 U.S.C. § 1386 by itself says nothing about the intended interactions between that section and 29 U.S.C. §§ 1399(c)(1)(A) and 1405(a)(1), which interactions are instead controlled by Congress's unambiguous language in 29 U.S.C. §§ 1381(b)(1) and 1405(a)(1). If anything, Consumers' approach would further exacerbate the funding deficiencies of underfunded plans, fail to properly reflect Consumers' share of UVBs, and unfairly shift the burden of such UVBs to

other employers in the plan and ultimately to the PBGC, which would undercut the reason MPPAA was passed in the first place and should be rejected. *See Slotky*, 956 F.2d at 1371; *see Cent. States, Se. & Sw. Areas Pension Fund v. Safeway, Inc.*, 229 F.3d 605, 612 (7th Cir. 2000) ("plac[ing] all of the burden of new UVBs on remaining employers . . . was precisely what the MPPAA was designed to prevent."). Thus, the Fund's interpretation of 29 U.S.C. § 1381(b)(1) is fully consistent with Congress's intent.

## V. Consideration of the PBGC's Opinion Letters and Regulations Does Not Compel a Different Conclusion.

The Court should follow the decisions of the Ninth Circuit and the district court rulings in *Quad/Graphics I* and *Perfection Bakeries*, and not the opinion expressed in PBGC Opinion Letter 85-4, 1985 WL 32704 (Jan. 30, 1985). Such PBGC opinion letters addressing questions of statutory interpretation "are not entitled to Chevron deference" but are only "entitled to respect to the extent that they have the power to persuade." *CenTra, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund*, 578 F.3d 592, 601 (7th Cir. 2009) (citations omitted); *Quad/Graphics II*, 909 F.3d at 1218–19. This is because opinion letters are not subject to notice and comment or the other requirements for administrative rulemaking and, accordingly, opinion letters do not receive the same level of deference as formal regulations. *See CenTra, Inc.*, 578 F.3d at 601.

As held in the *Quad/Graphics* cases and in *Perfection Bakeries*, the PBGC's opinion as to the meaning of 29 U.S.C. § 1381 should receive no deference, because the statutory text unambiguously requires a multiemployer pension fund to first apply the credit and only "then" apply the 20-year limitation on payments. *Quad/Graphics II*, 909 F.3d at 1219; *Quad/Graphics I*, 250 F. Supp. 3d. at 565–66; *Perfection Bakeries*, 2023 WL 4412165 at *12. Notably, the PBGC did not address key aspects of the statute later raised by these courts (such as the interaction between 29 U.S.C. §§ 1381, 1386, and 1405), and so its analysis lacks the power to persuade as

to the meaning of the statute. *See, e.g., Quad/Graphics II*, 909 F.3d at 1218; *Quad/Graphics I*, 250 F. Supp. 3d at 565; *Perfection Bakeries*, 2023 WL 4412165 at *12. Accordingly, the Court should look to the *Quad/Graphics* and *Perfection Bakeries* decisions, not PBGC Letter 85-4, for guidance.

Nor do Consumers' arguments concerning 29 C.F.R. §§ 4206.1 and 4206.3 have any bearing on the proper interpretation of the underlying statute. (*See* Consumers Brief, Dkt. No. 31, at 24–25.) Although 29 C.F.R. § 4206.1(a) does provide that "[t]he purpose of the credit is to protect a withdrawing employer from being charged twice for the same unfunded vested benefits of the plan," there is no reason to believe that the PBGC's limited statement about 29 U.S.C. 1386(b)(2)'s purpose should override the unambiguous text of, and calculation required by, 29 U.S.C. § 1381(b)(1). To the contrary, "the general rule is that where a text is unambiguous, its plain language controls." *Marlowe v. Bottarelli*, 938 F.2d 807, 812 (7th Cir. 1991); *see also Perfection Bakeries*, 2023 WL 4412165 at *11. Even if 29 C.F.R. § 4206.1 could affect the Court's interpretation of the statute, Consumers selectively quotes that regulation in a misleading way: the regulation only notes that "[29 U.S.C. § 1386(b)(2)] requires the PBGC to prescribe regulations *adjusting the amount of this credit* to ensure that the liability for the subsequent withdrawal properly reflects the employer's share of liability with respect to the plan." 29 C.F.R. § 4206.1(a) (emphasis added). Contrary to Consumers' argument, therefore, the PBGC neither has nor claims authority under 29 C.F.R. § 4206.1(a) to change the order in which the credit is applied under 29 U.S.C. § 1381(b)(1)(B) but rather only the amount of such credit, and so the statements in 29 C.F.R. § 4206.1(a) should not be understood as endorsing Consumers' approach. The regulation appearing at 29 C.F.R. § 4206.3 similarly does nothing to clarify the underlying meaning of 29 U.S.C. § 1381, as the regulation simply paraphrases the text of 29

U.S.C. § 1386 instead of providing any new meaning:

| **29 U.S.C. § 1386(b):** | **29 C.F.R. § 4206.3:** |
|---|---|
| In the case of an employer that has withdrawal liability for a partial withdrawal from a plan, | Whenever an employer that was assessed withdrawal liability for a partial withdrawal from a plan |
| any withdrawal liability of that employer for a partial or complete withdrawal from that plan in a subsequent plan year | partially or completely withdraws from that plan in a subsequent plan year, |
| shall be reduced by the amount of any partial withdrawal liability (reduced by any abatement or reduction of such liability) of the employer with respect to the plan for a previous plan year. | it shall receive a credit against the new withdrawal liability in an amount greater than or equal to zero . . . . |

When placed in the proper context, therefore, neither 29 C.F.R. §§ 4206.1(a) nor 4206.3 support Consumers' position about the order in which the credit is to be applied, because those regulations speak only to the amount of the credit, which the PBGC expressly recognized in 29 C.F.R. § 4206.3 may be "equal to zero."

[**Remainder of Page Intentionally Left Blank**]

## CONCLUSION

The Court should follow the plain text of the statute and the decisions in *Quad/Graphics II* and *Perfection Bakeries* and hold that the Fund correctly applied the credit for Consumers' prior partial withdrawal before applying the 20-year limitation on payments. Accordingly, the Fund requests that the Court enforce the Final Award and order Consumers to continue to make payments in compliance with the withdrawal liability assessments as issued, which required Consumers: (a) in the case of the 2017 Partial Assessment, to make 240 monthly payments of $42,212.04, with the first installment due on or before April 1, 2019, and a final installment due on or before March 1, 2039; and (b) in the case of the 2019 Complete Assessment, to make 240 monthly payments of $50,736.80, with the first installment due on or before October 1, 2019 and the last such payment due on or before September 1, 2039.

Respectfully Submitted,

*/s/ Daniel E. Sullivan*
Daniel E. Sullivan (#6330522)
Central States Law Department
8647 W. Higgins Road
Chicago, Illinois 60631
Telephone: (847) 582-5078
Fax: (847) 518-9797
dsulliva@centralstatesfunds.org

*Counsel for Central States,*
*Southeast and Southwest Areas*
*Pension Fund*
