**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CONSUMERS CONCRETE CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 23-cv-2695 |
| v. | ) | Case No. 23-cv-3005 |
| | ) | |
| CENTRAL STATES, SOUTHEAST AND | ) | The Honorable LaShonda A. Hunt |
| SOUTHWEST AREAS PENSION FUND, | ) | |
| | ) | |
| Defendant. | ) | |

**CONSUMERS CONCRETE'S MEMORANDUM IN OPPOSITION TO CENTRAL
STATES PENSION FUND'S MOTION TO ENFORCE ARBITRATION AWARD**

Mark M. Trapp
Conn Maciel Carey, LLP
53 W. Jackson Blvd.
Suite 1352
Chicago, Illinois 60604
(312) 809-8122
mtrapp@connmaciel.com

*Counsel for Consumers Concrete Corp.*

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT .................................................................................................... 2

    A.    The arbitrator's ruling is contrary to the term "withdrawal liability" in section 1386(b)(1). .................................................................................... 2

        1.    The terms "withdrawal liability" and the "allocable amount of unfunded vested benefits" are not synonymous. ..................................... 2

        2.    Each adjustment under section 1381(b)(1) adjusts the "allocable amount of unfunded vested benefits," but section 1386(b)(1) reduces "withdrawal liability" .................................................................. 6

        3.    Section 1405 adjusts the "the unfunded vested benefits allocable to an employer" and is a necessary adjustment to calculate "withdrawal liability". .......................................................................... 9

        4.    The Fund's reliance on *Quad/Graphics* is misplaced .......................... 11

        5.    Congress specifically excluded the prior partial credit from the "reallocation" amounts under section 1391 ........................................... 13

    B.    The arbitrator's ruling is contrary to the words "in the case of a partial withdrawal" in section 1381(b)(1)(B). ..................................................... 13

        1.    Construing the statutorily defined terms "complete withdrawal" and "partial withdrawal" to overlap is not the best reading of the statute. ................................................................................................... 14

        2.    As used elsewhere in the MPPAA, the phrase "in the case of a partial withdrawal" does not include a complete withdrawal. .................. 18

    C.    The arbitrator's ruling is contrary to the long-standing views of the PBGC. ........ 21

    D.    The Court should remand the reduction issue to the arbitrator. ............................ 23

III. CONCLUSION ................................................................................................ 25

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ACW Flex Pack LLC v. Wrobel*,
  2023 WL 4762596 (N.D. Ill. July 26, 2023).................................................15, 16

*Advocate Health Care Network v. Stapleton*,
  137 S.Ct. 1652 (2017)..........................................................................18

*Arreola-Castillo v. U.S.*,
  889 F.3d 378 (7th Cir. 2018) ...................................................................6

*Bailey v. United States*,
  516 U.S. 137 (1995).........................................................................2, 4

*Baker v. Runyon*,
  114 F.3d 668 (7th Cir. 1997) ..................................................................21

*Bd. of Trs. of IBT Local 863 Pension Fund v. C&S Wholesale Grocers, Inc.*,
  5 F.Supp.3d 707 (D.N.J. 2014) .................................................................5

*Bd. of Trs. of IBT Local 863 Pension Fund v. C&S Wholesale Grocers, Inc.*,
  802 F.3d 534 (3d Cir. 2015)................................................................4, 5, 6

*Bd. of Trustees, Sheet Metal Workers' National Pension Fund v. BES Services, Inc.*,
  469 F.3d 369 (4th Cir. 2006) ........................................................9, 10, 12, 25

*Beeler v. Saul*,
  977 F.3d 577 (7th Cir. 2020) ..................................................................17

*Burgess v. United States*,
  553 U.S. 124 (2008)...........................................................................14

*Centra, Inc. v. Central States*,
  578 F.3d 592 (7th Cir. 2009) ..................................................................22

*Central States v. Johnco, Inc.*,
  694 F.Supp. 478 (N.D. Ill. 1988) ...........................................................9, 12

*Central States v. Rail Terminal Servs. LLC*,
  2019 WL 2326002 (N.D. Ill. May 31, 2019) ......................................................25

*Davis v. PBGC*,
  571 F.3d 1288 (D.C. Cir. 2009)................................................................23

*Findlay Truck Line, Inc. v. Central States*,
  726 F.3d 738 (6th Cir. 2013) ................................................................25

*Flying Tiger Line v. Teamsters Pension Trust Fund*,
  830 F.2d 1241 (3d Cir. 1987)...........................................................1, 25

*GCIU-Emp'r Ret. Fund v. MNG Enters., Inc.*,
  51 F.4th 1092 (9th Cir. 2022) ...............................................................15

*GCIU-Employer Retirement Fund v. Quad/Graphics, Inc.*,
  250 F.Supp.3d 551 (C.D. Cal. 2017) ....................................................20

*GCIU-Employer Retirement Fund v. Quad/Graphics, Inc.*,
  909 F.3d 1214 (9th Cir. 2018) ..................................3, 4, 11, 12, 13, 22

*Hylton v. U.S. Att'y Gen.*,
  992 F.3d 1154 (11th Cir. 2021) .............................................................20

*King v. St. Vincent's Hosp.*,
  502 U.S. 215 (1991)................................................................................6

*Mann v. LSQ Funding Group, L.C.*,
  71 F.4th 640 (7th Cir. 2023) .................................................................21

*Marquez v. Weinstein, Pinson & Riley, P.S.*,
  836 F.3d 808 (7th Cir. 2016) ..................................................................5

*Mason & Dixon Tank Lines, Inc. v. Cent. States*,
  852 F.2d 156 (6th Cir. 1988) ................................................................25

*Milwaukee Police Ass'n v. Flynn*,
  863 F.3d 636 (7th Cir. 2017) ................................................................18

*MSPA Claims v. Tenet Florida, Inc.*,
  918 F.3d 1312 (11th Cir. 2019) ..............................................................8

*Nat'l Shopmen Pension Fund v. DISA Indus. Inc.*,
  653 F.3d 573 (7th Cir. 2011) ................................................................22

*Penske Logistics LLC v. Freight Drivers and Helpers Local Union No. 557
  Pension Fund*,
  721 Fed.Appx. 240 (4th Cir. 2018).......................................................25

*Perfection Bakeries, Inc. v. RWDSU Pension Fund*,
  2023 WL 4412165 (N.D. Ala. July 7, 2023) .................................4, 9, 10, 12, 22

*Robbins v. Chipman Trucking, Inc.*,
  693 F.Supp. 628 (N.D. Ill. 1986) ............................................................1

*Schneider Nat'l Leasing, Inc. v. United States,*
    11 F.4th 548 (7th Cir. 2021) ...................................................................18

*Stone v. Immigration & Naturalization Serv.,*
    514 U.S. 386 (1995).................................................................................5

*Talignani v. U.S.,*
    26 F.4th 379 (7th Cir. 2022) ...................................................................17

*Tanzin v. Tanvir,*
    141 S.Ct. 486 (2020)...............................................................................17

*The Wilderness Society v. U.S. Fish and Wildlife Service,*
    316 F.3d 913 (9th Cir. 2003) ...................................................................23

*Trustees of the IAM Nat'l Pension Fund v. M&K Emp. Sols., LLC,*
    2022 U.S. Dist. LEXIS 34746 (D.D.C. February 28, 2022).....................4

*U.S. v. Pace,*
    48 F.4th 741 (7th Cir. 2022) .....................................................................6

*United States v. Heon Seok Lee,*
    937 F.3d 797 (7th Cir. 2019) .....................................................................8

*United States v. Hyatt,*
    28 F.4th 776 (7th Cir. 2022) ...................................................................18

*United States v. Yung,*
    37 F.4th 70 (3d Cir. 2022) .........................................................................2

**Statutes**

29 U.S.C. § 1085(e)(9)...................................................................................5

29 U.S.C. § 1381 ..................................................................6, 7, 8, 9, 10, 12

29 U.S.C. § 1381(a) .....................................................................2, 3, 11, 14, 15

29 U.S.C. § 1381(b) ...................................................................2, 12, 14, 21, 22

29 U.S.C. § 1381(b)(1) ...........................3, 4, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19, 22

29 U.S.C. § 1381(b)(2) ........................................................................14, 15, 16, 17

29 U.S.C. § 1381(b)(3) ...................................................................14, 15, 16, 17, 18

29 U.S.C. § 1382(1) ....................................................................................4

29 U.S.C. § 1382(3) ................................................................................3, 11

29 U.S.C. § 1383 ................................................................................................14, 15, 16

29 U.S.C. § 1385 ..............................................................14, 15, 16, 18, 20, 21

29 U.S.C. § 1386 ......................................................................................7, 8, 9, 16, 18

29 U.S.C. § 1386(a) .......................................................................7, 8, 9, 20, 21, 22

29 U.S.C. § 1386(a)(1) ......................................................................7, 8, 9, 19

29 U.S.C. §1386(a)(1)(B) .............................................................................20

29 U.S.C. § 1386(a)(2) ......................................................................7, 19, 21

29 U.S.C. § 1386(b) ..................................................................................7, 9, 11, 13

29 U.S.C. § 1386(b)(1) ...........................1, 2, 4, 6, 7, 8, 9, 10, 11, 12, 13, 16, 17, 21, 22

29 U.S.C. § 1386(b)(2) ..............................................................................11, 22

29 U.S.C. § 1389 .................................................................................7, 13, 19, 22

29 U.S.C. § 1389(a) .....................................................................................7, 8

29 U.S.C. § 1391 ................................................2, 3, 5, 6, 7, 8, 9, 10, 13, 22

29 U.S.C. § 1391(a) ........................................................................................3

29 U.S.C. § 1391(b)(4) ...............................................................................13

29 U.S.C. § 1399 ...........................................................................................22

29 U.S.C. § 1399(c)(1) ...........................................................3, 7, 8, 11, 13, 19

29 U.S.C. § 1401 ...........................................................................................25

29 U.S.C. § 1401(a) ......................................................................................25

29 U.S.C. § 1401(a)(1) ...................................................................................1

29 U.S.C. § 1401(b)(2) .................................................................................25

29 U.S.C. § 1405 ......................................................................7, 9, 10, 13, 22

29 U.S.C. § 1405(a) ...................................................................................7, 9

29 U.S.C. § 1405(a)(1) ........................................................................8, 9, 10

29 U.S.C. § 1405(b) .......................................................................................8

29 U.S.C. § 1405(b)(1) ........................................................................................8

29 U.S.C. § 1405(b)(2) ........................................................................................8

**Other Authorities**

29 C.F.R. § 4206.1(a) ........................................................................................23

29 C.F.R. § 4206.3 ........................................................................................22, 23

29 C.F.R. § 4206.5 ........................................................................................24

29 C.F.R. § 4206.5(a) ........................................................................................24

29 C.F.R. § 4206.8(a) ........................................................................................24

52 Fed. Reg. 37329 (Oct. 6, 1987) ........................................................................3

Antonin Scalia & Bryan Garner, READING LAW: THE INTERPRETATION OF LEGAL
    TEXTS (2012) ........................................................................6, 15, 16, 17

## I.     INTRODUCTION

In the MPPAA, Congress directed that "any *withdrawal liability*" of an employer "in a subsequent plan year shall be reduced by the amount of any partial withdrawal liability … of the employer with respect to the plan for a previous plan year." 29 U.S.C. § 1386(b)(1) (emphasis added). In its opening brief, the Fund never directly addresses that rather than applying the credit to reduce Consumers' *withdrawal liability* in a subsequent plan year, it instead applied the credit to reduce the *allocable amount of unfunded vested benefits* attributable to Consumers' subsequent complete withdrawal, a number for which Consumers was never liable, and which is merely a starting point to calculate *withdrawal liability* under the statute. (Dkt. 29, 1863-1866)

Instead, the Fund uses the bulk of its briefing (Dkt. 29, 1866-1871) to argue that if the Court rules against the Fund on the issue before it, it should reduce Consumers' credit consistent with the Fund's arguments as to a second issue on which the arbitrator never ruled. (Dkt. 29, 1861) (acknowledging that "the arbitrator did not reach the second issue") (*See also* Dkt. 13, ¶10)

Because the statute requires that the credit reduce "withdrawal liability" in a subsequent plan year rather than the "allocable amount of unfunded vested benefits," the Court should reverse the arbitrator's ruling as to the sole issue before it. And because the statute requires arbitration of "*[a]ny* dispute between an employer and the plan sponsor," 29 U.S.C. § 1401(a)(1) (emphasis added), and it is undisputed that the arbitrator failed to consider the second issue, (Dkt. 13, ¶10) the Court should remand the second issue to the arbitrator for his initial consideration. 29 U.S.C. § 1401(a)(1). *See also Flying Tiger Line v. Teamsters Pension Trust Fund*, 830 F.2d 1241, 1255 (3d Cir. 1987); and *Robbins v. Chipman Trucking, Inc.*, 693 F.Supp. 628, 635 (N.D. Ill. 1986) ("arbitration promotes judicial economy and judicial restraint, both because the arbitrator's decision may dispose of the suit, and even if one party appeals the arbitrator's decision, the court will have the benefit of the arbitrator's analysis.").

## II. ARGUMENT

The sole issue before the Court is whether the Fund erred by applying Consumers' credit for its previous partial withdrawal to reduce the allocable amount of unfunded vested benefits attributable to Consumers' subsequent complete withdrawal, rather than the withdrawal liability for that withdrawal, as the statute directs. 29 U.S.C. § 1386(b)(1) ("any withdrawal liability of that employer for a … complete withdrawal from that plan in a subsequent plan year shall be reduced by the amount of any partial withdrawal liability … of the employer with respect to the plan for a previous plan year.").

### A. The arbitrator's ruling is contrary to the term "withdrawal liability" in section 1386(b)(1).

*1. The terms "withdrawal liability" and the "allocable amount of unfunded vested benefits" are not synonymous*

The arbitrator's ruling rests on a flawed rationale: namely, that an employer's *withdrawal liability* (determined under Section 1381(b)) is the same as its *allocable amount of unfunded vested benefits* (determined under Section 1391). (Dkt. 5-1, 64) ("the employer's allocable amount of unfunded vested benefits is its withdrawal liability") Those things are not the same.

To begin with, it makes no sense for Congress to use two utterly different phrases to mean the same thing. *Bailey v. United States*, 516 U.S. 137, 146 (1995) (presumption that where Congress used two terms, "it intended each term to have a particular, non-superfluous meaning."). *See also United States v. Yung*, 37 F.4th 70, 79 (3d Cir. 2022) ("where Congress uses different words, we read those words to have different meanings.").

Congress's use of two different terms is consistent with the fact that each term has a separate and distinct purpose. Under the statute, "withdrawal liability" is the amount for which an employer "is liable," 29 U.S.C. § 1381(a), while the "allocable amount of unfunded vested

benefits" is merely a tool used to calculate that withdrawal liability, much like *gross income* is a tool/starting point used to calculate *adjusted gross income* for tax liability purposes.

It works like this: Section 1391 sets forth various methods by which a plan sponsor "shall" determine "[t]he *amount of the unfunded vested benefits allocable* to an employer that withdraws from a plan[.]" 29 U.S.C. § 1391(a) (emphasis added). But because an employer is liable only for *withdrawal liability*, 29 U.S.C. § 1381(a), "the amount determined under section 1391 … to be the allocable amount of unfunded vested benefits" must be "adjusted" four ways to determine the withdrawal liability for which the employer is liable. 29 U.S.C. § 1381(b)(1).[1]

Thus, when an employer withdraws, a plan sponsor must first calculate the employer's *allocable amount of unfunded vested benefits* under Section 1391 and then apply the four sequential adjustments in Section 1381(b)(1) to reach the employer's *withdrawal liability*. 29 U.S.C. § 1381(b)(1). In other words, the allocable amount of unfunded vested benefits does not become withdrawal liability until completion of the required four-step adjustment process. *Id.*[2]

The primary cases on which the Fund relies acknowledge and accept this straightforward adjustment process by which the allocable amount of unfunded vested benefits is converted to withdrawal liability. Thus, in *GCIU-Employer Retirement Fund v. Quad/Graphics, Inc.*, 909 F.3d 1214 (9th Cir. 2018), the Ninth Circuit wrote that Section 1381(b)(1) "provides step-by-step instructions *for calculating employer withdrawal liability*" and that section "instructs employers

---

[1] Consistent with this distinction, a plan sponsor is authorized to "collect" only "the amount of the *withdrawal liability*[.]" 29 U.S.C. § 1382(3) (emphasis added). In the rare situation of a so-called "mass withdrawal" not involved here, (Dkt. 21-1, ¶10) an employer's liability is not limited by the 20-year payment cap, 29 U.S.C. §1399(c)(1)(D)(i), and "the total *unfunded vested benefits* of the plan" are "fully allocated" among all employers participating in the mass withdrawal. §1399(c)(1)(D)(ii) (emphasis added).

[2] The PBGC has acknowledged that *due to the required adjustments* an employer's withdrawal liability can be less than the allocable amount of unfunded vested benefits. *See* "Adjustment of Liability for a Withdrawal Subsequent to a Partial Withdrawal," 52 Fed. Reg. 37329, 37331 (Oct. 6, 1987) (noting "the fact that the employer's assessment for its prior partial withdrawal might have been less than its allocable liability for that withdrawal because of the *de minimis* rule or the 20-year payment cap[.]").

to calculate 'the allocable amount of unfunded vested benefits,' and then make a series of adjustments *to that sum*[.]" *Quad/Graphics*, 909 F.3d at 1217 (emphasis added).[3]

Likewise, in *Perfection Bakeries, Inc. v. RWDSU Pension Fund*, 2023 WL 4412165 (N.D. Ala. July 7, 2023), the District Court stated that Section 1381(b)(1) sets out a formula that "describes how to calculate the withdrawal liability: first by calculating the allocable amount of unfunded vested benefits, then adjusting *that amount* by four potential adjustments[.]" *Id*. at *8 (emphasis added). The same Court also said that "[a]fter calculating the allocable amount of unfunded vested benefits, the plan sponsor then applies four potential adjustments *to that number*, in sequential order, to reach the employer's withdrawal liability." *Id*. at *3 (emphasis added). Obviously, if an employer's *allocable amount of unfunded vested benefits* must be "adjusted" four ways to "calculate" or "reach" *withdrawal liability*, those two terms cannot mean the same thing. *Bailey*, 516 U.S. at 146.

Although *Quad/Graphics* and *Perfection Bakeries* each acknowledge the fundamental distinction between the *allocable amount of unfunded vested benefits* and *withdrawal liability*, apparently neither court recognized that its decision allowed the plan sponsor to apply the prior partial credit against the allocable amount of unfunded vested benefits, rather than the withdrawal liability, as the statute requires. *See* 29 U.S.C. § 1386(b)(1).

Consistent with the plain statutory language, the Third Circuit has specifically held that "an employer's withdrawal liability and allocable amount of unfunded vested benefits are *not synonymous*." *Bd. of Trs. of IBT Local 863 Pension Fund v. C&S Wholesale Grocers, Inc.*, 802

---

[3] The statement that the statute "instructs *employers*" to calculate and adjust the allocable amount of unfunded vested benefits is plainly a drafting error – the statute explicitly instructs plan sponsors (not employers) to "determine the amount of the employer's withdrawal liability[.]" 29 U.S.C. § 1382(1). *See also Trustees of the IAM Nat'l Pension Fund v. M&K Emp. Sols., LLC*, 2022 U.S. Dist. LEXIS 34746 at *4 (D.D.C. February 28, 2022) ("The MPPAA calls upon a plan's trustees, *not the employer*, to propose the amount of withdrawal liability[.]") (emphasis added).

F.3d 534, 546 (3d Cir. 2015) (emphasis added). In so holding, the Third Circuit quoted Section 1381(b)(1), which states that an employer's *allocable amount of unfunded vested benefits* must be "adjusted" in order to become *withdrawal liability*. *C&S Wholesale Grocers*, 802 F.3d at 546.[4]

Despite the clear language of the statute, the arbitrator rejected Consumers' argument that "no withdrawal liability <u>exists</u> until the plan makes all the adjustments" under Section 1381(b)(1), and instead relied on what he called a "simpler interpretation" – that cutting off the comma, the word "adjusted" and the rest of the statutory language in Section 1381(b)(1) leaves a supposedly "independent clause" that reads: "The withdrawal liability of an employer to a plan is the amount determined under section 1391 to be the allocable amount of unfunded vested benefits…" (Dkt. 5-1, 64) (quoting portion of 29 U.S.C. § 1381(b)(1))

While the arbitrator accurately quoted an incomplete portion of the statute, his ellipsis replaced and effectively deleted the remainder of the sentence, and the missing words are necessary for the full context and a complete understanding. The deletion is instructive, however, for only by ignoring the word "adjusted" and the language that follows could the arbitrator pretend that withdrawal liability is the same as the allocable amount of unfunded vested benefits. (Dkt. 5-1, 64)

But statutory construction is not a cafeteria plan, and one cannot simply choose the words one prefers out of a statute and leave the rest. Instead, statutes must be read in their entirety, and construed such that "no clause, sentence, or word shall be superfluous, void, or insignificant." *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 811 (7th Cir. 2016). Thus, reading a portion of the statute in isolation is improper, *U.S. v. Pace*, 48 F.4th 741, 753 (7th Cir. 2022) ("We

---

[4] Like the District Court it affirmed, the Third Circuit also relied on the fact that in 2008, Congress specifically amended 29 U.S.C. § 1085(e)(9)(B) to replace the 2006 phrase "an employer's withdrawal liability under section 1391" with the phrase "the allocation of unfunded vested benefits to an employer under section 1391[.]" *C&S Wholesale Grocers*, 802 F.3d at 546. *See also Bd. of Trs. of IBT Local 863 Pension Fund v. C&S Wholesale Grocers, Inc.*, 5 F.Supp.3d 707, 724 (D.N.J. 2014) (citing *Stone v. Immigration & Naturalization Serv.*, 514 U.S. 386, 397 (1995) ("When Congress acts to amend a statute, we presume it intends its amendments to have real and substantial effect.")).

… read a statute as a whole rather than as a series of unrelated and isolated provisions.") (quoting *Arreola-Castillo v. U.S.*, 889 F.3d 378, 386 (7th Cir. 2018)), as is simply disregarding contradictory language. *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) ("we … follow the cardinal rule that a statute is to be read as a whole"). *See also* Antonin Scalia & Bryan Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS, p. 174 (2012) ("it is no more the court's function to revise by subtraction than by addition").

The Fund makes no attempt to explain or defend the arbitrator's selectively edited quotation. Perhaps it hopes to avoid drawing attention to the fact that the arbitrator deliberately ignored the statutory language contradicting his primary holding. In any event, because the statutory text plainly states that to become *withdrawal liability* the *allocable amount of unfunded vested benefits* must be "adjusted" four separate times, 29 U.S.C. § 1381(b)(1), the arbitrator's finding that those terms are equivalent cannot stand. *C&S Wholesale Grocers*, 802 F.3d at 546 ("an employer's withdrawal liability and allocable amount of unfunded vested benefits are not synonymous.").

> 2.   *Each adjustment under section 1381(b)(1) adjusts the "allocable amount of unfunded vested benefits," but section 1386(b)(1) reduces "withdrawal liability"*

Every adjustment in Section 1381(b)(1) adjusts "the amount determined under Section 1391 of this title to be the allocable amount of unfunded vested benefits[.]" 29 U.S.C. § 1381(b)(1). In sharp contrast, the prior partial credit in Section 1386(b)(1) reduces "any *withdrawal liability* of that employer … in a subsequent plan year." 29 U.S.C. §1386(b)(1). In addition, each of the four adjustments references the other adjustments under Section 1381(b)(1), showing precisely where that adjustment fits in the sequence called for under the statute, while the prior partial credit makes no reference to any § 1381 adjustment. 29 U.S.C. §1386(b)(1).

For example, the "first" Section 1381 adjustment is in Section 1389. 29 U.S.C. § 1381(b)(1)(A). Rather than "withdrawal liability," the "de minimis" reduction in Section 1389 adjusts "the *amount of the unfunded vested benefits allocable under section 1391* of this title[.]" 29 U.S.C. § 1389(a) (emphasis added).

The second adjustment applies "in the case of a partial withdrawal, in accordance with section 1386[.]" 29 U.S.C. § 1381(b)(1)(B). Like Section 1389, Section 1386(a) adjusts "the amount determined under section 1391," *i.e.*, the allocable amount of unfunded vested benefits. 29 U.S.C. § 1386(a)(1). Under that section, "the *amount determined under section 1391 of this title*, and adjusted under section 1389 of this title, if appropriate," is multiplied by a fraction to account for the fact that the withdrawal being calculated is partial, not complete. 29 U.S.C. § 1386(a)(1-2) (emphasis added). This amount constitutes "an employer's liability for a partial withdrawal, *before the application of sections 1399(c)(1) and 1405 of this title*[.]" 29 U.S.C. § 1386(a) (emphasis added).[5]

The third adjustment applies "to the extent necessary to reflect the limitation on annual payments under section 1399(c)(1)(B) of this title[.]" 29 U.S.C. § 1381(b)(1)(C). Like the first and second adjustments, the third adjustment applies to "*the amount determined under section 1391 of this title*, adjusted if appropriate under section 1389 of this title and then under section 1386 of this title," rather than withdrawal liability. 29 U.S.C. § 1399(c)(1)(A)(i).

"[F]inally," the fourth adjustment applies "in accordance with section 1405 of this title." 29 U.S.C. § 1381(b)(1)(D). Section 1405(a) also adjusts "*the unfunded vested benefits allocable*

---

[5] Notably, while section 1386(a) refers to section 1391 (the allocable amount of unfunded vested benefits), section 1389 (the first adjustment), section 1399(c)(1) (the third adjustment) and section 1405 (the fourth adjustment), it does <u>not</u> mention the prior partial credit in section 1386(b)(1). 29 U.S.C. §1386(a)(1). Section 1386(a)'s failure to reference the credit in section 1386(b) despite referencing every other adjustment is consistent with Consumers' argument that the credit does not apply in the second adjustment. The Fund has never explained why Section 1386(a) references every adjustment, in order, but fails to include the prior partial credit under Section 1386(b)(1).

*to an employer* (after application of all sections of this part having a lower number designation than this section)[.]" 29 U.S.C. §1405(a)(1) (emphasis added). Section 1405(b) also speaks solely in terms of limiting "the *unfunded vested benefits allocable* to the employer[.]" 29 U.S.C. §1405(b)(1)-(2) (emphasis added).

Thus, by their terms, each of the four adjustments in Section 1381 adjusts the *allocable amount of unfunded vested benefits* (sometimes called "the amount determined under section 1391"). *See* 29 U.S.C. §1389(a); § 1386(a)(1); § 1399(c)(1)(A)(i); and § 1405(a)(1). In sharp contrast, the prior partial credit reduces *withdrawal liability*. 29 U.S.C. §1386(b)(1). This Court should give effect to Congress's decision to use materially different terms, and apply the credit to reduce withdrawal liability, rather than the allocable amount of unfunded vested benefits. *United States v. Heon Seok Lee*, 937 F.3d 797, 816 (7th Cir. 2019) ("We must respect [a] decision [to use different words] and give such variations effect.").

In particular, the second adjustment provides for an adjustment to the allocable amount of unfunded vested benefits "in accordance with section 1386[.]" 29 U.S.C. §1381(b)(1)(B). In turn, Section 1386(a) adjusts "the amount determined under section 1391," *i.e.,* the allocable amount of unfunded vested benefits. 29 U.S.C. §1386(a)(1). In contrast, the credit in Section 1386(b)(1) reduces "withdrawal liability[.]" 29 U.S.C. §1386(b)(1). Thus, the Fund's assertion that "both parts of §1386 are invoked by 29 U.S.C. §1381(b)(1)(B)" (Dkt. 29, 1865) is wrong – the *only* Section 1386 adjustment to the *allocable amount of unfunded vested benefits* is the "partial prorate adjustment" in Section 1386(a).

When read in conjunction with Section 1381(b)(1), only Section 1386(a) applies at the second adjustment. *MSPA Claims v. Tenet Florida, Inc.*, 918 F.3d 1312, 1322 (11th Cir. 2019) ("cross-references are read in conjunction with the provision being interpreted.").

Section 1381(b)(1) explicitly states that the required adjustments are to "the amount determined under section 1391 of this title," 29 U.S.C. §1381(b)(1), and Section 1386(a) adjusts "the amount determined under section 1391 of this title[.]" 29 U.S.C. §1386(a)(1). In contrast, Section 1386(b) reduces "withdrawal liability." 29 U.S.C. §1386(b)(1).

3.     *Section 1405 adjusts the "the unfunded vested benefits allocable to an employer" and is a necessary adjustment to calculate "withdrawal liability"*

Similarly, the Fund argues that because Section 1405 "contains the fourth and 'final' adjustment," that section "requires application of all of §1386 before the fourth potential adjustment can be applied." (Dkt. 29, 1865) (citing *Perfection Bakeries*, 2023 WL 4412165 at *10) But this again overlooks the fact that Section 1405 adjusts "the unfunded vested benefits allocable to an employer," 29 U.S.C. §1405(a)(1), while the prior partial credit instead reduces "withdrawal liability[.]" 29 U.S.C. §1386(b)(1).

Because Section 1405 is the "final" adjustment to "the unfunded vested benefits allocable to an employer," the Section 1405 adjustment completes the process of calculating withdrawal liability. 29 U.S.C. §1405(a)(1). In fact, courts have held that Section 1381 "requires funds to consider Section 1405" in calculating withdrawal liability. *Central States v. Johnco, Inc.*, 694 F.Supp. 478, 480-81 (N.D. Ill. 1988) ("issues under Section 1405 are part of the calculus for determining withdrawal liability under Section 1381"). *See also Bd. of Trustees, Sheet Metal Workers' National Pension Fund v. BES Services, Inc.*, 469 F.3d 369, 373 (4th Cir. 2006) ("any determination of withdrawal liability under §1381 *must* take into consideration an employer's sale of assets or insolvency under §1405.") (emphasis in original). "Indeed, a §1381 determination of withdrawal liability cannot be accomplished in accordance with the statutory mandate unless it is 'adjusted' in accordance with §1405." *BES Services*, 469 F.3d at 373.

"Since consideration of § 1405 is a necessary step in determining withdrawal liability under § 1381," *BES Services*, 469 F.3d at 373, the process of determining withdrawal liability is not complete until the allocable amount of unfunded vested benefits has been "adjusted" "in accordance with section 1405[.]" 29 U.S.C. §1381(b)(1)(D). And because the credit is applied against withdrawal liability, it can only be applied after the withdrawal liability is calculated – just as the statute states. 29 U.S.C. §1386(b)(1).

In fact, the language of Section 1405 supports Consumers' position, because that section further adjusts the *unfunded vested benefits allocable to an employer* "after the application of all [prior] sections," 29 U.S.C. §1405(a)(1), which necessarily means that every preceding adjustment likewise adjusts the allocable amount of unfunded vested benefits, just as Section 1381(b)(1) says. 29 U.S.C. §1381(b)(1) (setting out four "adjust[ments]" to "the allocable amount of unfunded vested benefits"). In sum, Section 1381(b)(1)(D)'s specification that Section 1405 sets out the "final[]" adjustment to "the unfunded vested benefits allocable to an employer" does not preclude Section 1386(b)(1) from reducing "withdrawal liability."

Given this, the District Court's speculation in *Perfection Bakeries* that because §1381(b)(1) makes Section 1405 the "final[]" adjustment to the allocable amount of unfunded vested benefits this "could lead to a situation where the credit cannot be applied at all," *Perfection Bakeries*, 2023 WL 4412165 at *10, is simply wrong – Section 1386(b)(1) does not set out an "adjust[ment]" to the allocable amount of unfunded vested benefits; it sets out a "reduc[tion]" to "withdrawal liability." 29 U.S.C. § 1386(b)(1). That key distinction is perfectly consistent with Consumers' argument here – that to calculate withdrawal liability, a plan must first calculate the allocable amount of unfunded vested benefits under Section 1391, then adjust that amount by the four specified adjustments under Section 1381. 29 U.S.C. § 1381(b)(1). After those adjustments have

been applied, the resulting withdrawal liability is then "reduced by the amount of any partial withdrawal liability … for a previous plan year." 29 U.S.C. § 1386(b)(1).

       4.    *The Fund's reliance on* Quad/Graphics *is misplaced.*

The Fund's reliance on three sentences underlying the Ninth Circuit's ruling in *Quad/Graphics* does not help it. (Dkt. 29, 1866) In support of its holding allowing the prior partial credit to be applied before the amount of withdrawal liability is calculated, the Ninth Circuit wrote:

> The § 1386(b) prior partial withdrawal credit reduces the employer's complete withdrawal liability. The § 1399(c)(1)(B) provision, which forgives debt, can only logically be applied after that withdrawal liability is calculated. The § 1386(b) credit reduces the employer's debt, and an employer cannot be forgiven a debt for which it is not liable. *Quad/Graphics*, 909 F.3d at 1218 (citation omitted).

While mostly correct, these sentences entirely undermine the decision in *Quad/Graphics* and the Fund's position here. For example, *Quad/Graphics* states (correctly) that the § 1386(b) prior partial withdrawal credit reduces "withdrawal liability" and "the employer's debt," thereby equating *the employer's debt* with its *withdrawal liability*. *Id*. This is consistent with the statute, which explicitly states that the prior partial credit reduces "withdrawal liability," 29 U.S.C. §1386(b)(1), the only amount for which an employer "is liable" under the statute, 29 U.S.C. §1381(a), and the only amount a plan sponsor is authorized to "collect" from a withdrawn employer. 29 U.S.C. §1382(3). Because the prior partial credit reduces "withdrawal liability," it "can only logically be applied after that withdrawal liability is calculated." *Quad/Graphics*, 909 F.3d at 1218.[6]

Despite this, *Quad/Graphics* held that the 20-year payment cap (the §1399(c)(1)(B) provision) could only be applied after the withdrawal liability was calculated – but this contradicts

---

[6] This is consistent with the purpose of the credit, which is applied "so that the liability for any complete or partial withdrawal in any subsequent year … properly reflects the employer's share of liability with respect to the plan." 29 U.S.C. §1386(b)(2).

the statute and makes no sense, because the 20-year payment cap adjusts the allocable amount of unfunded vested benefits (not withdrawal liability) and is one of the four adjustments necessary to calculate withdrawal liability. 29 U.S.C. § 1381(b)(1)(C).

Obviously, the 20-year payment cap cannot be the third adjustment to calculate withdrawal liability (which necessarily comes *before* the fourth and "final[]" adjustment) and also be applied *after* that withdrawal liability is calculated. 29 U.S.C. § 1381(b)(1)(D). *See also BES Services*, 469 F.3d at 373 (Section 1381(b) "fixes the amount of withdrawal liability" by adjusting the allocable amount of unfunded vested benefits); and *Johnco*, 694 F.Supp. at 481 (Section 1381 necessarily requires funds to apply adjustments to calculate withdrawal liability). Even the District Court in *Perfection Bakeries* found this "atextual interpretation" of the Ninth Circuit "not persuasive," because "it ignores the existence of the fourth potential adjustment, which by the statute's terms must be applied after the 20-year cap." *Perfection Bakeries*, 2023 WL 4412165 at *9.[7]

Plainly, the 20-year payment cap is one of the four adjustments that "fixes the amount of withdrawal liability," *BES Services*, 469 F.3d at 373, and it does so by adjusting the allocable amount of unfunded vested benefits. 29 U.S.C. § 1381(b)(1)(C). In contrast, the prior partial credit, which "reduces the employer's complete *withdrawal liability*," "can only logically be applied after that withdrawal liability is calculated." *Quad/Graphics*, 909 F.3d at 1218 (emphasis added). In other words, the four statutory adjustments are applied to the *allocable amount of unfunded vested benefits* to calculate the amount of withdrawal liability, then the prior partial credit is applied to reduce the amount of *withdrawal liability* "by the amount of any partial withdrawal liability … for a previous plan year." 29 U.S.C. § 1386(b)(1).

---

[7] In addition, the ruling on which *Quad/Graphics* relied "had nothing to do with the order of operations in calculating an employer's withdrawal liability." *Perfection Bakeries*, 2023 WL 4412165 at *9.

12

5. *Congress specifically excluded the prior partial credit from the "reallocation" amounts under section 1391*

The arbitrator asserted that "Consumers provides no credible argument that Congress deliberately omitted the prior partial credit from the sequence of adjustments in Section 1381(b)(1) intending it to be applied after all the other adjustments." (Dkt. 5-1, 63) However, the use of the phrase "withdrawal liability" in Section 1386(b)(1) (as opposed to the allocable amount of unfunded vested benefits) indicates that Congress did precisely that. 29 U.S.C. § 1386(b)(1). Even *Quad/Graphics* agrees that a provision meant to reduce withdrawal liability "can only logically be applied after that withdrawal liability is calculated." *Quad/Graphics*, 909 F.3d at 1218.

Moreover, Congress also "omitted" the prior partial credit from another statutory provision. Under the MPPAA, the so-called "presumptive method" for determining the amount of unfunded vested benefits allocable to an employer includes "the employer's proportional share of the unamortized amounts of the reallocated unfunded vested benefits[.]" 29 U.S.C. §1391(b)(1)(C). This allows a plan to "reallocate" any amounts it is prevented from assessing pursuant to the de minimis, 20-year payment cap and Section 1405 adjustments. 29 U.S.C. §1391(b)(4)(B)(ii) ("reallocated unfunded vested benefits" includes "any amount which the plan sponsor determines ... *will not be assessed* as a result of the operation of section 1389, 1399(c)(1)(B), or 1405") (emphasis added). While not dispositive, it seems likely that if the prior partial credit in Section 1386(b) reduced the allocable amount of unfunded vested benefits the same way as the other sections, Congress would have allowed a plan to reallocate those amounts, too – it did not. *Id*.

## B. The arbitrator's ruling is contrary to the words "in the case of a partial withdrawal" in section 1381(b)(1)(B).

The second adjustment under Section 1381(b)(1) applies only "in the case of a partial withdrawal[.]" 29 U.S.C. § 1381(b)(1)(B). However, it is undisputed that what was involved here

13

was *not* a partial withdrawal, but a complete withdrawal. (Dkt. 21-1, ¶36) ("The Fund calculated and assessed this as a complete withdrawal as described in 29 U.S.C. § 1383, and not as a partial withdrawal.") (*See also* Dkt. 21-6, 627) ("Type of Calculation: 2019 Complete Withdrawal") Because by its terms the second adjustment applies only "in the case of a partial withdrawal," the arbitrator erred in applying it in the case of a complete withdrawal.

      1.    *Construing the statutorily defined terms "complete withdrawal" and "partial withdrawal" to overlap is not the best reading of the statute.*

Section 1381(a) states: "If an employer withdraws from a multiemployer plan in a complete withdrawal *or* a partial withdrawal, then the employer is liable to the plan in the amount determined … to be the withdrawal liability." 29 U.S.C. § 1381(a) (emphasis added). "For purposes of subsection (a)," subsection 1381(b) sets forth a formula for calculating an employer's "withdrawal liability," 29 U.S.C. § 1381(b)(1), as well as separate definitions for the terms "complete withdrawal," 29 U.S.C. § 1381(b)(2), and "partial withdrawal." 29 U.S.C. § 1381(b)(3).

The term "partial withdrawal" means "a partial withdrawal *described in Section 1385* of this title." 29 U.S.C. § 1381(b)(3) (emphasis added). In contrast, the term "complete withdrawal" means "a complete withdrawal *described in Section 1383* of this title." 29 U.S.C. § 1381(b)(2) (emphasis added). In other words, the type of withdrawal at issue is determined by the section under which the withdrawal occurred – either Section 1383, in which case the withdrawal is a "complete withdrawal," 29 U.S.C. § 1381(b)(2), or Section 1385, in which case the withdrawal is a "partial withdrawal." 29 U.S.C. § 1381(b)(3). Because statutory definitions are exclusive, a particular withdrawal must either be a complete withdrawal *or* a partial withdrawal. 29 U.S.C. § 1381(b)(2-3). *See also Burgess v. United States*, 553 U.S. 124, 130 (2008). By like token, the calculation of a particular withdrawal liability is either for a complete withdrawal or a partial withdrawal. 29 U.S.C. § 1381(a).

In this case, the Fund admits that it calculated and assessed the withdrawal at issue "as a complete withdrawal described in 29 U.S.C. § 1383, and not as a partial withdrawal." (Dkt. 21-1, ¶36) Because the withdrawal is "described in section 1983," it matches the statutory definition of a "complete withdrawal." 29 U.S.C. § 1381(b)(2). Just as importantly, because the withdrawal is <u>not</u> described in Section 1385, it is outside the statutory definition of a "partial withdrawal." 29 U.S.C. § 1381(b)(3).

This point bears repeating – under the MPPAA, a particular withdrawal is either a complete withdrawal or a partial withdrawal, and it cannot be both. *See GCIU-Emp'r Ret. Fund v. MNG Enters., Inc.*, 51 F.4th 1092, 1098 (9th Cir. 2022) (Black's Law Dictionary defines "partial" as "not complete"). So complete and partial withdrawals are mutually exclusive, *id.*, and the statutory definitions are conclusive. *ACW Flex Pack LLC v. Wrobel*, 2023 WL 4762596 at *6 (N.D. Ill. July 26, 2023) ("When a statute includes an explicit definition of a term, we must follow that definition"). *See also* READING LAW, p. 228 ("It is very rare that a defined meaning can be replaced with another permissible meaning of the word on the basis of other textual indications; the definition is virtually conclusive."). Again, here it is admitted that the withdrawal at issue is a complete withdrawal, and not a partial withdrawal. (Dkt. 21-1, ¶36)

Notwithstanding that the withdrawal here was a complete withdrawal, the arbitrator allowed the Fund to apply the credit as part of the second adjustment, which applies only "in the case of a partial withdrawal[.]" 29 U.S.C. § 1381(b)(1)(B). The arbitrator held the prior partial credit "is an adjustment 'in the case of a partial withdrawal' because it is applying *a prior partial withdrawal credit*." (Dkt. 5-1, 63) (emphasis added). But a "partial withdrawal" is described in Section 1385, 29 U.S.C. § 1381(b)(3), while the prior partial credit is described in Section 1386, *not* in Section 1385. 29 U.S.C. § 1386(b)(1). In effect, the arbitrator turned the calculation of a

*complete withdrawal* described in Section 1383 into the calculation of a *partial withdrawal* described in Section 1385 by assuming the application of a *partial withdrawal credit* not described in either of those sections.

However, because it incorporates the defined term "partial withdrawal," the phrase "in the case of a partial withdrawal" means one thing: "the case of a partial withdrawal *described in section 1385*[.]" 29 U.S.C. § 1381(b)(3) (emphasis added). *Wrobel*, 2023 WL 4762596 at *6 ("When a statute includes an explicit definition of a term, we must follow that definition"). And because the prior partial credit is not "described in Section 1385," the prior partial credit is not encompassed within the phrase "in the case of a partial withdrawal." Accordingly, as used in 29 U.S.C. § 1381(b)(1)(B), that phrase refers only to the calculation of a current *partial withdrawal*, not to any *credit* that may or may not exist. And there is no need for the phrase "in the case of a partial withdrawal" to apply the credit – the credit itself states explicitly that it applies to either "a partial or complete withdrawal from that plan in a subsequent plan year." 29 U.S.C. § 1386(b)(1).

Thus, whether a particular withdrawal is complete or partial depends solely on whether it arose under Section 1383 or Section 1385. 29 U.S.C. § 1381(b)(2-3). And the fact that an employer may have experienced a prior partial withdrawal has nothing to do with whether a subsequent withdrawal is classified as complete or partial – if it did, the credit would transform every subsequent withdrawal into a partial withdrawal, contrary to the statutory definitions. *Id.*

But a calculation "in the case of a complete withdrawal" does not become a calculation "in the case of a partial withdrawal" simply because the employer *previously experienced* a partial withdrawal. 29 U.S.C. § 1381(b)(2). *See also* READING LAW, p. 226 ("When … a definitional section says that a word 'means' something, the clear import is that this is its *only* meaning.") (emphasis in original). Instead, the statutory definition stays the same, and "[w]hen a statute

16

includes an explicit definition, [a court] must follow that definition[.]" *Talignani v. U.S.*, 26 F.4th 379, 381 (7th Cir. 2022), *quoting Tanzin v. Tanvir,* 141 S.Ct. 486, 490 (2020).

Moreover, construing the phrase "in the case of a partial withdrawal" to include a complete withdrawal renders the phrase duplicative because it interprets the defined term "partial withdrawal" to include a "complete withdrawal," itself a defined term. 29 U.S.C. §§ 1381(b)(2), (3). This is highly disfavored. *See* READING LAW, p. 174 (no word or provision "should needlessly be given an interpretation that causes it to duplicate another").

To support his departure from the statutory definitions (which he failed even to mention in his analysis), the arbitrator asserted that "it makes no sense to argue that an adjustment for a prior partial withdrawal must be taken when calculating a new partial withdrawal but not when calculating a new complete withdrawal." (Dkt. 5-1, 63) But that is not the argument made – the prior partial credit *never* applies as part of the second adjustment. Instead, it applies only after withdrawal liability is calculated and reduces *either* "a partial or complete withdrawal from that plan in a subsequent plan year[.]" 29 U.S.C. §§ 1386(b)(1). In sum, the adjustments under Section 1381(b)(1) establish the amount of withdrawal liability, and the prior partial credit in Section 1386(b)(1) reduces *that amount*. Because this reading harmonizes the statutory provisions and does not require the rewriting of statutory definitions, it is preferable to one that does the opposite. *Beeler v. Saul*, 977 F.3d 577, 585 (7th Cir. 2020) ("We interpret statutes as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts in an harmonious whole.").

As noted in the opening brief, the Fund's interpretation renders superfluous the phrase "in the case of a partial withdrawal," because the statute would operate the same way without the phrase. Of course, a provision should not be given an interpretation that causes it to "have no consequence." *United States v. Hyatt*, 28 F.4th 776, 783 (7th Cir. 2022). *See also Schneider Nat'l*

*Leasing, Inc. v. United States*, 11 F.4th 548, 559 (7th Cir. 2021) ("we must assume Congress intended each word of the statute to have meaning.").

In fact, had Congress intended the step two adjustment to apply to either a complete or partial withdrawal (like the other three adjustments), it could have simply worded that adjustment to state: "next, in accordance with section 1386." That is, it literally could have said *nothing* – had Congress not specifically inserted the defined term limiting the second adjustment's application to "in the case of a *partial withdrawal*," it would apply to either a partial or complete withdrawal, just like the other three adjustments in section 1381(b)(1). The Fund's interpretation divests the phrase of any real meaning, treating the words "as stray marks on a page – notations that Congress made but did not really intend." *Advocate Health Care Network v. Stapleton*, 137 S.Ct. 1652, 1659 (2017). However, this Court must give effect to the phrase consistent with its plain meaning and the statutory definition to encompass only the calculation of a partial withdrawal "described in section 1385." 29 U.S.C. § 1381(b)(3). *See also Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 644 (7th Cir. 2017) ("We avoid interpretations that render provisions superfluous.").

> 2.   As used elsewhere in the MPPAA, the phrase *"in the case of a partial withdrawal"* does not include a complete withdrawal.

The Fund argues for an expansive reading of the phrase "in the case of a partial withdrawal" in the second adjustment to encompass even a complete withdrawal; for this is the only way it could shoehorn the prior partial credit into the second adjustment. But the Fund has never explained why that exact same phrase used in the third adjustment should be restricted to include only a partial withdrawal and exclude a complete withdrawal.

The third adjustment requires a plan sponsor to adjust the allocable amount of unfunded vested benefits "to the extent necessary to reflect the limitation on annual payments under section 1399(c)(1)(B)[.]" 29 U.S.C. §1381(b)(1)(C). Notably, "[i]n the case of a partial withdrawal," the

annual payment is reduced by "the fraction determined under section 1386(a)(2) of this title." 29 U.S.C. § 1399(c)(1)(E)(ii).

Thus, "in the case of a partial withdrawal," a plan sponsor must calculate the "partial prorate fraction" under Section 1386(a)(2). That fraction accounts for the fact that the withdrawal is partial, and not complete in two ways: first, by reducing the allocable amount of unfunded vested benefits (after the Section 1389 adjustment, if applicable). 29 U.S.C. § 1386(a)(1). And second, by reducing the annual payment by the same ratio. 29 U.S.C. § 1399(c)(1)(E)(ii).

The Fund calculated the partial pro rate fraction under Section 1386(a)(2) when it calculated Consumers' 2017 partial withdrawal. (Dkt. 21-4, 589) (calculating the "Partial Prorate Fraction" to be .5708920188) (*See also* Dkt. 21-1, ¶23) (the partial pro rate fraction is .5708920188) The Fund used this fraction to reduce the allocable amount of unfunded vested benefits, as well as the annual payment. (Dkt. 21-4, 589) But the Fund did not calculate a partial prorate fraction when it calculated Consumers' 2019 complete withdrawal. (Dkt. 21-6, 628) ("Partial Prorate" of 0.00, "Prorate Fraction" and "Partial Prorate Fraction" of 1.0000000000) In other words, the Fund did not perform a calculation intrinsically tied to the calculation of any partial withdrawal.

Despite this, the Fund interprets the phrase "in the case of a partial withdrawal" in the second adjustment to include a complete withdrawal preceded by a partial withdrawal. But in the third adjustment, it reverts to interpreting the phrase "in the case of a partial withdrawal" to include only the calculation of a current partial withdrawal. Had the Fund applied the partial prorate fraction to the complete withdrawal, it would have drastically decreased the annual payment for the complete withdrawal. (Dkt. 21-6, 628)[8]

---

[8] Multiplying the annual payment by the partial prorate fraction would have reduced the annual payment from $607,344.90 to $346,728.36. (Dkt. 21-6, 628) ($264.50 x 2,296.20 x .5708920188 = $346,728.36)

In other words, when it benefits the Fund, the phrase "in the case of a partial withdrawal" includes the calculation of a complete withdrawal. And where it does not, the Fund sticks with the statutory definition. That the same phrase means different things from one subsection to the next is good evidence that the construction is unsound. *See Hylton v. U.S. Att'y Gen.*, 992 F.3d 1154, 1159 (11th Cir. 2021) ("It would be odd if, in two consecutive subsections of the Code . . . the same words were read to mean one thing in the first subsection but another in the second.").

It is true that the original District Court to confront this issue held that the statutory phrase in the second adjustment "refers not just to the particular assessment being calculated … but more broadly to any situation where a withdrawal assessment is affected by the existence of a partial withdrawal." *GCIU-Employer Retirement Fund v. Quad/Graphics, Inc.*, 250 F.Supp.3d 551, 563 (C.D. Cal. 2017). But if the phrase "in the case of a partial withdrawal" as used in the second adjustment refers "more broadly to any situation where a withdrawal assessment is affected by the existence of a partial withdrawal," why doesn't it mean the same thing in the third adjustment? Moreover, Section 1386(a) twice uses the phrase "in the case of a partial withdrawal" to refer exclusively to the calculation of a partial withdrawal as described in section 1385. 29 U.S.C. §1386(a)(1)(B) and (a)(2)(B)(ii) (each describing the calculation for a partial withdrawal based on a 70% contribution decline described in section 1385).[9]

Contrary to the District Court and the arbitrator, a court must "presume that identical words used in different parts of the same act are intended to have the same meaning." *Mann v. LSQ Funding Group, L.C.*, 71 F.4th 640, 647 (7th Cir. 2023). Because the phrase "in the case of a partial withdrawal" as used elsewhere in the statute refers exclusively to a partial withdrawal, this Court

---

[9] At the Arbitration, the Fund's Group Manager for Operations Accounting testified that Section 1386(a) applies "every time" there is a partial withdrawal, and "never" applies to a complete withdrawal. (Dkt. 21-8, 833) Mr. Sprau manages the groups that handle the calculation and collection of withdrawal liability at the Fund. (Dkt. 21-8, 828)

should interpret the same phrase in the second adjustment consistent with that meaning. *Id. See also Baker v. Runyon*, 114 F.3d 668, 670 (7th Cir. 1997) ("Courts must presume that a legislature says in a statute what it means and means in a statute what it says there.").

**C.      The arbitrator's ruling is contrary to the long-standing views of the PBGC.**

The Arbitrator labeled Consumers' position a "unique interpretation," (Dkt. 5-1, 64) but the PBGC – the federal agency tasked with interpreting Title IV of ERISA – has held the same position as Consumers for more than forty years. *See* PBGC. Op. Ltr. 82-35 (November 15, 1982) ("in the event of a subsequent withdrawal [the plan sponsor] must first calculate the withdrawal liability … and then reduce that amount by the amount of partial withdrawal liability previously assessed."); and PBGC Op. Ltr. 85-4 (January 30, 1985) ("the reduction in an employer's withdrawal liability required by Section 1386(b)(1) on account of a previous partial withdrawal assessment must be made after the employer's subsequent withdrawal liability is calculated in accordance with Section 1381(b)") (citations changed to U.S. Code).[10]

The Fund's opening brief fails to mention that the PBGC has long since labeled its method "clearly erroneous," and Consumers' method "correct." PBGC Op. Ltr. 85-4, p. 1. This silence is probably because the PBGC's views of the credit are 100% aligned with Consumers' arguments here, and address the issues overlooked by the *Quad/Graphics* and *Perfection Bakeries* decisions: namely, that a credit that reduces withdrawal liability "is not an adjustment under Section 1381(b)(1) at all," but must instead be applied "after the employer's subsequent withdrawal liability is calculated[.]" PBGC Op. Ltr. 85-4, p. 2 (cite changed to U.S. Code).

---

[10] While Consumers does not suggest it is legally binding on this Court, as recently as 2016 the PBGC has reiterated that a prior partial credit must be taken *after* the calculation of any subsequent withdrawal liability, including the 20-year cap. (*PBGC 2016 Blue Book*, Question #28) The "Blue Book" is an annual compilation of questions and answers from the enrolled actuary meeting, and can be viewed on the PBGC website: https://www.pbgc.gov/prac/other-guidance/blue-books

In Opinion Letter 85-4, the PBGC set forth the "correct" method to calculate a withdrawal liability involving a prior partial credit:

> Step 1: Calculate allocable amount of unfunded vested benefits (§ 1391).
> Step 2: Subtract de minimis deductible, if any (§ 1389).
> Step 3: If partial withdrawal has occurred, multiply by partial withdrawal fraction (§ 1386(a)).
> Step 4: Make any additional adjustments required by Section 1381(b) (§§ 1399, 1405).
> Step 5: Reduce withdrawal liability by the amount of any previously assessed partial withdrawal liability (§ 1386(b)(1)). PBGC Op. Ltr. 85-4, p. 1 (cites to U.S. Code).

While this Court owes no deference to the opinion letters, the Seventh Circuit has on several occasions adopted persuasive positions articulated in PBGC opinion letters. *See Nat'l Shopmen Pension Fund v. DISA Indus. Inc.*, 653 F.3d 573, 580 (7th Cir. 2011) ("we find the agency's views persuasive."); and *Centra, Inc. v. Central States*, 578 F.3d 592, 601 (7th Cir. 2009) (adopting PBGC's position in an opinion letter). As the PBGC opinion letters are fully consistent with the underlying statutory provisions, this Court should find them persuasive.

The Fund likewise fails to mention the PBGC's promulgated regulations related to the credit, even though the PBGC acted pursuant to express authority from Congress. *See* 29 U.S.C. § 1386(b)(2). For example, the PBGC promulgated a regulation that states an employer "shall receive a credit against the new withdrawal liability[.]" 29 C.F.R. § 4206.3. This regulation makes clear that the reduction called for by the statute is a "credit," or a deduction from an amount otherwise due, and that it applies against the subsequent "withdrawal liability." *Id*. Another PBGC regulation states "that when an employer that has partially withdrawn from a plan subsequently incurs liability for another partial or a complete withdrawal from that plan, the employer's liability for the subsequent withdrawal is to be reduced by the amount of its liability for the prior partial withdrawal." 29 C.F.R. § 4206.1(a). To the extent they clarify the statute, these regulations also deserve deference. *See The Wilderness Society v. U.S. Fish and Wildlife Service*, 316 F.3d 913, 921

(9th Cir. 2003); and *Davis v. PBGC*, 571 F.3d 1288, 1293 (D.C. Cir. 2009) ("The PBGC is … better equipped to interpret ERISA than courts, and it is for this reason we defer to the PBGC's authoritative and reasonable interpretations of ambiguous provisions of ERISA.").

**D.     The Court should remand the reduction issue to the arbitrator.**

The Fund focuses the majority of its attention on an issue not decided by the arbitrator: the reduction of the credit, arguing that if the Court decides against the Fund as to the application of the credit, it should nonetheless modify the award to account for the Fund's reduction of the credit. (Dkt. 29, 1866-1871) A few undisputed points illustrate the absurdity of the Fund's argument.

To begin with, because it failed to account for the 20-year payment cap, the Fund calculated Consumers' credit due because of the prior partial withdrawal to be $9,481,183.65. (Dkt. 21-1, ¶52) But the parties stipulated that (depending on the interest rate) the present value of the 20-year payment stream for the underlying withdrawal was either $7,727,681.56 or $6,357,948.90. (Dkt. 21-1, ¶54) The fact that the Fund's calculation of the credit exceeds by $1.7 to $3.0 million dollars the agreed value of the withdrawal on which the credit is based demonstrates how wildly inaccurate the Fund's calculation is – it obviously makes no sense for a credit to exceed the underlying amount on which that credit is based.

The reason the Fund's calculation is so far off is because the Fund misapplies the regulation under which the credit is calculated, which takes account of the 20-year payment cap, 29 C.F.R. § 4206.5, and instead pretends that the 20-year payment cap is a reduction of *withdrawal liability*, rather than an adjustment to the *allocable amount of unfunded vested benefits*. This maneuver allows the Fund to reduce the credit by almost 96% of its value. (Dkt. 21-1, ¶55-56) But before a plan may reduce a credit, it must first reduce the withdrawal liability on which the credit is based. *See* 29 C.F.R. §4206.8(a) ("If an employer's withdrawal liability for a prior partial withdrawal has been reduced or waived, the credit … shall be adjusted[.]").

Here, the Fund repeatedly admits that it "has never changed or altered" the partial withdrawal assessment, (Dkt. 21-1, ¶30) that since it assessed the partial withdrawal there has been "no reduction, waiver and/or abatement" of the amounts demanded, (Dkt. 21-1, ¶58) and "no adjustments have been made" to the assessment "since it was issued." (Dkt. 21-1, ¶70) Because the Fund has never reduced the partial withdrawal liability, it cannot reduce the credit. *See* 29 C.F.R. §4206.8(a); and 29 C.F.R. §4206.5(a) ("When an employer's prior partial withdrawal liability *has been reduced or waived*, the credit shall be adjusted."). In essence, the Fund counts the 20-year payment cap – which, as shown herein, adjusts the *allocable amount of unfunded vested benefits* – as a "reduction" of *withdrawal liability*. As demonstrated herein and in the briefing before the arbitrator, there are numerous solid legal arguments against the Fund's position. (Dkt. 21-13, 1701-1723) (Dkt. 21-14, 1755-1770)

Importantly, however, the arbitrator never decided the reduction issue. (Dkt. 29, 1861) (acknowledging that "the arbitrator did not reach the second issue") (*See also* Dkt. 13, ¶10) For this reason, the Court should consider only the issue decided by the arbitrator and appealed by the parties – the application of the credit. If the Court rules for the Fund, no decision on the second issue will be necessary. But if the Court rules against the Fund, it "should remand the matter to the arbitrator to resolve the second issue." (Dkt. 29, 1854)

The MPPAA requires "[a]ny dispute" about withdrawal liability to be "resolved through arbitration." 29 U.S.C. § 1401(a). Courts require withdrawal liability disputes to be decided initially by arbitrators, as only "[u]pon completion of the arbitration proceedings" may a party challenge the arbitrator's award. 29 U.S.C. § 1401(b)(2). In short, "arbitration reigns supreme for withdrawal liability disputes." *Findlay Truck Line, Inc. v. Central States*, 726 F.3d 738, 755 (6th Cir. 2013) (affirming order to arbitrate). *See also Flying Tiger Line v. Teamsters Pension Tr. Fund*,

830 F.2d 1241, 1255 (3d Cir. 1987) ("Section 1401 … dictates that any dispute between an employer and the plan sponsor … shall be resolved through arbitration."); *Penske Logistics LLC v. Freight Drivers and Helpers Local Union No. 557 Pension Fund*, 721 Fed.Appx. 240, 246 (4th Cir. 2018) (remanding case to arbitrator); *BES Servs.*, 469 F.3d at 375 ("a dispute concerning the determination of withdrawal liability … is committed *in the first instance* to arbitration.") (emphasis by court); *Mason & Dixon Tank Lines, Inc. v. Cent. States*, 852 F.2d 156, 165-66 (6th Cir. 1988) ("an arbitrator should be given an opportunity to address the remaining issues."); and *Central States v. Rail Terminal Servs. LLC*, 2019 WL 2326002 at *3-4 (N.D. Ill. May 31, 2019).

If the Court intends to consider or decide the second issue, counsel respectfully requests the opportunity to engage in additional briefing on that issue. Finally, counsel respectfully requests oral argument. *See* LR 78.3.

### III.    CONCLUSION

For the foregoing reasons, and those in the opening brief, Consumers respectfully requests the Court to grant its Motion, vacate the arbitration award and remand the case to the arbitrator for determination in the first instance of the reduction issue.

Dated:  February 9, 2024

Respectfully submitted,

/s/ *Mark Trapp*
Mark M. Trapp (ARDC # 6276066)
Conn Maciel Carey LLP
53 W. Jackson Blvd., Suite 1352
Chicago, Illinois 60604
(312) 809-8122
mtrapp@connmaciel.com

*Counsel for Consumers Concrete Corp.*